Statement of the Case.
MONROE, C. J.
This is an appeal from a judgment rejecting relator’s demand for over $6,000, claimed as the aggregate penalty due by defendant for its failure to comply with section 22 of Act 267 of 1914 by filing with the secretary of state the report in the year 1916, required by that section; the allegations of the petition being that defendant is a corporation “operating a public utility in this state,” to wit, the conveyance and delivery of water for the purpose of irrigating lands in this state.
Defendant admits that it is engaged in pumping water for the irrigation of lands belonging to it and to others, but denies that such service constitutes the operation of a public utility within the meaning of the law, and alleges that it has made the only report required of it by Act 267 of 1914, namely, the report required by section 21 of that act. It also attacks the act in question as in some respects unconstitutional.
It is admitted that defendant was incorporated by notarial charter in 1896; but the charter was not offered in evidence. The unquestioned testimony of its secretary, who was the only witness called in the case, reads in part as follows:
“Q. Mr. Ritchie, during the year 1915 what was the nature of the business carried on by the defendant company? A. Raising rice; irrigation. Q. The rice — was that raised on land owned by the company? A. There were about 850 to 900 acres of land which belonged to our company, and irrigation through our canal system — different owners of rice lands within the radius of our canal system. Q. About 'how much land did you irrigate, belonging to other people, during the year 1915? A. About 2,700 acres. * * * ”
Cross-examination:
“Q. What is the entire length of your canal system? A. The canal system is approximately about five miles in length. Q. That is the main canal? A. Yes, sir. Q. What about the lateral lines? A. The lateral lines vary in about half a mile to three-quarters at the outside. Q. On either side? A. Tes. Q. Is the canal buüt altogether on your own property? A. No, sir; not on our property at all, except where it leaves the bayou, for about seven-eighths of a mile. Q. What bayou is that? A. Bayou Nepique, part of Mermentau river. Q. I-Iow did you get your right of way; was that given to you or expropriated? A. No, sir; we had to-purchase it— pay for it, where we went through. * * * Q. Now, the nature of your remuneration is, you get a certain toll of the crop made? A. Tes; one-fourth of the crop at the machine, we furnishing our own sacks and doing our own hauling from the machine. * * * Q. Well, is that the uniform price that you charge to all farmers? A. Tes, sir; no variation. Q. Is that the customary price that is charged by such companies in that section of the country? A. The custom varies somewhat — depends on what the lift is. * * * Q. Are you charged with taxes on the right of way ? A. Tes. Q. Tou have that assessed to you? A. Tes; canal system.”
Opinion.
[1] Section 21 of Act 267 of 1914 requires every corporation organized under the laws of this state to file an, annual report containing certain information in the office of the secretary of state, and imposes a penalty of $50 “upon the president or vice president, the secretary or assistant secretary,” of such corporation in the event the report is not filed “within 15 days after written request therefor by the secretary of state.”
Section 22 declares that:
“Any domestic or foreign corporation (other than corporations reporting to the Railroad Commission), operating public utilities in this state under a franchise granted by the state, or any parish or municipal corporation, shall, in the statement prescribed by the preceding section, state further.”
And then follows an enumeration of certain items of information not required of the corporations referred to in section 21. And it imposes upon the corporations a penalty of $250, “and $25, in addition thereto for every day that it fails to file a report after the expiration of the month of March.”
The terms “quasi public,” “public service,” or “public utility” corporations are, in a measure, defined in a work now in course of publication, as follows:
*13 “Quasi Publio Corporations. — There is a large class of private corporations which on account of special franchises conferred on them owe a duty to the public which they may be compelled to perform. This class of corporations is known as public service corporations, and in legal phraseology as quasi public corporations, or corporations affected with a public interest. A quasi public corporation may be said to bo a private corporation which has given to it certain powers of a public nature, such, for instance, as the power of eminent domain, in order to enable it to discharge its duties for the public benefit, in which respect it differs from an ordinary private corporation, the powers of which are given and exercised for the exclusive advantage of its stockholdei's. Corporations strictly private are those the direct object of which is to promote private interests, and in which the public has no concern, except the indirect benefits resulting from the promotion of trade and the development of the general resources of the country. They derive nothing from the government, except the right to be corporations and to exercise the powers granted. In all other respects, to the extent of their powers, they stand on the footing of natural persons, having such property as they may legally acquire, and holding and using it ultimately for the benefit of their stockholders.” 7 R. C. L. pp. 41, 42, § 15.
Of the term “franchises,” as applied in this country, the Supreme Court of the United States has said:
“Eor franchises are special privileges conferred ■ by government upon individuals, and which do not belong to the citizens of the country generally of common right. It is essential to the character of a franchise that it should be a grant from the sovereign authority, and in this country no franchise can be held, which is not derived from a law of the state.” Bank of Augusta v. Earle, 13 Pet. 595, 10 L. Ed. 311.
[2, 3] The business of raising rice, of cutting canals or ditches through land in private ownership, of pumping water from public streams, conveying it through such canals, and irrigating with it one’s own lands and the land of one’s neighbors who are willing to pay for that service, requires no franchise, or grant of any kind, from state, parish, or municipality; nor do we understand that any such grant was sought by defendant or made by the state or any of its agencies. As we interpret the testimony, all that the individuals composing the defendant company obtained by its charter was the corporate franthat is to say, the right to be a cor- and ip. a corporate rather than an individual capacity to conduct a business any of them were at liberty to con-at pleasure, subject, no doubt, to the condition that if, in conducting it, they abuse their right to pump water from public streams adjacent to their land, or the land of those whom they contracted to with water, or should abuse any other possessed by them, to the prejudice of rights of other individuals or corpora- or of the state, the law would afford injured party an adequate remedy. The possession of a mere corporate franchise does however, constitute the possessor a pub-utility corporation, for, if it did, all corporations would fall into that class, and, as defendant possesses no other, it follows that is not a public utility corporation. Beyond there aré reasons, obvious upon the face the enactment, which show that the Gen-Assembly had no intention of applying term “franchise,” as used in section 22 the Act of 1914, to the corporate franfor it deals with any foreign, as well any domestic, corporation, “operating * * under a franchise granted by the or any parish or municipal corpora-whereas the 'state has no power to the corporate franchise to a foreign corporation, and its parishes and municipalihave no power to grant such franchise to corporation; and, if the term, as used, taken to mean the corporate franchise, applied, as in that case it can only be applied, to domestic corporations, we should obliged to attribute to the General Assembly the intention of requiring more from own corporations than from those of othstates doing business here, notwithstandthe explicit declaration which includes in application of the enactment, whatever else it may be held to mean, “any (meaning every) domestic or foreign corporation (other *15 than corporations reporting to the Railroad Commission), operating,” etc.
We conclude, then, that the term “franchise,” as used in the statute, was intended to be applied to what are called “secondary franchises,” being special privileges, in addition to the corporate franchise which may be granted by the state (as the right of eminent domain) or by a parish or municipality (as the right to operate a public ferry, or to make use of a street).
Acts 157 of 1914 and 268 of 1916 confer upon such corporations organized for the construction and maintenance of canals as may specifically accept their conditions the right of eminent domain and other privileges which will probably convert those which accept into public service or public utility corporations, but it is not alleged that defendant has so accepted, and the evidence discloses nothing either in the powers that it possesses or in its relations to the public arising from the manner in which it uses those powers to authorize the conclusion that it is operating a public utility under a franchise granted by the state, a parish, or municipality. It is not therefore within the law upon which plaintiff relies, and plaintiff’s demand was properly rejected.
The judgment appealed from is accordingly affirmed.
LECHE, J., takes no part.