Dear Messers. Reed, Kearns Jones:
You have requested an opinion of the Attorney General on behalf of the St. Tammany Parish Hospital Service Districts Nos. 1 and 2 (the "Districts"). The Districts were created pursuant to Act No. 180 of 1984, as amended by Acts 353 of 1986, 999 of 1991 and 570 of 1992 ("Act 180"). The Districts have been providing medical care to the community on a nonprofit basis since 1954.
You state that the Districts have determined that in order to exist and fulfill their statutory mission and duty in today's health care environment, it is necessary for them to join with four private, nonprofit hospitals located in Orleans and Jefferson Parishes, to-wit: Children's Hospital, Ochsner Foundation Hospital, Pendleton Memorial Methodist Hospital and Touro Infirmary (the "Alliance").
A summary of the Alliance is set forth in Exhibit 1 entitled "Summary For Participation In The Alliance By St. Tammany Parish Hospital Service District No. 1 ("St. Tammany Parish Hospital") and St. Tammany Hospital Service District No. 2 ("Slidell Memorial Hospital Medical Center"), Prepared as of July 30, 1996". Exhibit 1 is attached hereto.
To accomplish the purposes of the Alliance, a private, nonprofit, non-stock 501(c)(3) corporation will be created and referred to as AllianceCorp. AllianceCorp will be the "limited parent" and leader of the Alliance of the six nonprofit hospitals. These hospitals will retain their identities as separate institutions and will continue to own their respective assets.
The Districts will each create a quasi-public nonprofit corporation referred to as NewCorp. The two NewCorps and the four private, nonprofit hospitals will be members of AllianceCorp. Each NewCorp will be the link between its District and AllianceCorp.
AllianceCorp will enter into an affiliation agreement (the "Agreement") with the four private, nonprofit hospitals and the two NewCorps. The Districts will intervene and be bound by the provisions of the Agreement. Each District will enter into an Operations and Management Agreement ("O M") with its NewCorp.
You submit that the Alliance will constitute a joint venture and cooperative endeavor to provide an integrated health care delivery system, offering high quality, locally controlled, cost-effective health care services for the benefit of the public. It will also enable its members to compete in a managed care marketplace by eliminating excessive duplication.
You further submit that the contributions made by members to the Alliance will be equivalent to or exceeded by the benefit each member and the public receives from the cooperative endeavor created by the Alliance.
The model for the Alliance consists of three phases, to-wit: Initiation Phase, Formation Phase and Alignment Phase. You request this opinion in order to determine whether there are any legal obstacles that would preclude the Districts and their respective NewCorps from participating in the Formation Phase of the Alliance as set forth in Exhibit 1.
You present thirty questions for our consideration. They will be answered in the order of presentation. We deem the following constitutional and statutory provisions, or excerpts thereof, to be applicable to the issues presented.
"Act No. 180 of 1984 Section 1. Creation; Limits; Purposes
 A. There are hereby created two hospital service districts in St. Tammany Parish, hereafter to be termed the St. Tammany Parish Hospital Service District No. 1 and the St. Tammany Parish Hospital Service District No. 2 . . . .
* * *
 B. Each district is created for the following purposes:
 (5) To cooperate with other public and private institutions and agencies engaged in providing health services to the public.
* * *
 Section 3. Powers, duties, and responsibilities of each board of commissioners
 In addition to any powers, duties, and responsibilities defined elsewhere in this Act, each commission shall have the following powers, duties, and responsibilities for its respective district:
* * *
 (15) To establish, maintain, and carry on its activities through one or more profit or nonprofit corporations for the benefit of the district.
* * *
 (18) To do any and all things except as limited by the Louisiana Constitution which are necessary for and to the advantage of health care facilities . . .
* * *
 Section 8. Corporate status and powers of each district; evidence of acts and proceedings
 A. Each hospital service district created in this Act shall constitute a body corporate in law with all the powers of a corporation . . . and to do and perform any and all acts in its corporate capacity and its corporate name necessary and proper for the carrying out of the objects and purposes for which the hospital service district was created . . . .
 R.S. 46:1055. Powers and duties of commission
* * *
 B. In addition to the powers and duties set forth in Subsection A of this Section, the commission may enter into a special services agreement with any person, including but not limited to a hospital management firm or hospitals, to manage, operate, and administer a hospital or hospitals, or any part thereof, under the control of the commission for the benefit of the hospital service district. . . .
 R.S. 46:1071. Legislative findings and purpose
 The legislature hereby finds that the market for hospital and health care services is becoming increasingly competitive. The legislature finds that the hospital and other health care providers are contracting to engage in economic joint ventures or form partnerships to offer integrated health care services to the public. The legislature finds that this increasing competition is forcing hospitals and other health care providers to develop market strategies and strategic plans to effectively compete. The legislature further finds that hospital service districts are presently at a competitive disadvantage. The legislature hereby declares that the purpose of R.S. 46:1071
through 1076 is to enhance the ability of a hospital service district to compete effectively and equally in the market for health care services. Towards this end, the provisions of R.S. 46:1071 through 1076 shall be construed liberally.
 R.S. 46:1072. Definitions
 As used in this Part the following words and phrases shall have the following meanings ascribed for each unless the context clearly indicates otherwise:
 (1) `Hospital health services' means but is not limited to any clinical, diagnostic, or rehabilitation service and any administrative, managerial, or operational service incident thereto.
 R.S. 46:1073. Market strategies and strategic planning
 A. In addition to powers and duties otherwise provided and notwithstanding any law to the contrary, a hospital service district may develop marketing strategies for its existing hospital health services or any hospital health service to be provided in the future and may develop strategic plans for the development of any future hospital health service or facility.
 B. Notwithstanding the provisions of R.S. 42:4.1 et seq. or any other law to the contrary, a hospital service district commission may hold an executive session for the discussion and development of marketing strategies and strategic plans.
 C. Notwithstanding the provisions of R.S. 44:1 et seq. or any other law to the contrary, any marketing strategy and strategic plan of a hospital service district commission and the facility owned or operated by the district shall not be public record and shall be confidential but shall be subject to court subpoena.
 R.S. 46:1077. Contracts or joint ventures for hospital health services
 In addition to the powers and duties otherwise provided and notwithstanding any other law to the contrary, the board of commissioners of a hospital service district and any corporation or health facility owned or operated by such district or commission may contract with or engage in a joint venture with any person, corporation, partnership, or group of persons to offer, provide, promote, establish, or sell any hospital health service. A hospital service district commission contracting with or engaging in a joint venture with any person, corporation, partnership, or group of persons to offer, provide, promote, establish, or sell a hospital health service shall be presumed to be engaged in a cooperative endeavor as provided by Article VII, Section 14(C) of the 1974 Louisiana Constitution. The commission shall be further presumed to have entered into such contract for the purpose of obtaining a tangible benefit and for a public purpose, and such contracts shall not be presumed to be a donation in contravention of Article VII, Section 14(A) of the 1974 Louisiana Constitution.
 R.S. 12:201. Terms defined
 As used in this Chapter, unless the context requires otherwise,
* * *
 (16) `Member' means each natural or artificial person admitted to membership in the corporation, and, unless the context indicates otherwise, includes shareholders.
 (17) `Membership' means an interest in a corporation entitling the holder thereof to participate in the control of the corporation or to a pro rata share of its net assets upon dissolution.
 R.S. 12:202. Incorporation
 One or more natural or artificial persons capable of contracting may form a nonprofit corporation under this Chapter.
 R.S. 12:203. Articles of Incorporation
* * *
B. The articles shall set forth:
* * *
 (9) Whether the corporation is to be organized on a stock basis or a non-stock basis, or both;
 (10) If organized in whole or in part on a stock basis:
 (a) The aggregate number of shares which the corporation shall have authority to issue;
 (b) If the shares are to consist of one class only, the par value of each share, or a statement that all of the shares are without par value;
 (c) If the shares are to be divided into classes or series, the number of shares of each class or series; . . . .
 R.S. 12:207. General powers
 A. A corporation shall have the power to perform any acts which are necessary or proper to accomplish its purposes as expressed or implied in the articles, or which may be incidental thereto.
 B. Without limiting the grant of power contained in subsection A of this section, it is hereby specifically provided that every corporation shall, subject to the provisions of subsection D of this section, have authority:
* * *
 (5) In any legal manner to acquire, hold, vote and use, alienate and encumber, and to deal in and with, shares, memberships, or other interests in, or obligations of, other nonprofit, business of foreign corporations, associations, partnerships, joint ventures, individuals or governmental entities;
* * *
 (9) To elect or appoint officers and agents . . . .
 R.S. 12:210. Members, shareholders and certificates
Except as provided in R.S. 12:209:
 (A) A corporation may be organized on either a stock basis or a non-stock basis or both, as set forth in its articles.
 (B) The shares of corporations organized in whole or in part on a stock basis shall be in such classes, series and par values (or without par value) as the articles shall provide . . . .
 R.S. 12:217. Classes and qualifications of membership
 A. Membership shall be of the classes, and shall be governed by the rules of admission, retention, suspension and expulsion, which the articles or by-laws prescribe; provided that all rules shall be reasonable, germane to the purpose of the corporation, and equally enforced as to all members of the same class.
 R.S. 12:218. Membership dues; assessments
 A. Corporations may levy dues or assessments, or both, upon their members, but only in accordance with authority conferred either by the articles or the bylaws.
 B. Dues or assessments, or both, may be levied upon shares and non-shareholding members of all classes and series alike, or in different amounts or proportions, or upon a different basis, upon shares or non-shareholding members of different classes or series, which shall be uniform as to all shares or all non-shareholding members of the same class or series . . .
 C. The articles or by-laws may include provisions for the cancellation of membership, and for the forfeiture of shares, upon reasonable notice, for nonpayment of dues or assessments, and for the reinstatement of membership or shareholder status.
 R.S. 12:222. Bylaws
 A. The members or the directors of a corporation may make, amend and repeal the bylaws of the corporation, subject always to the power of the members to change the action of the directors. Unless the articles or bylaws provide otherwise, the powers hereby conferred shall be exercised by a majority vote of the directors or the voting members of the corporation . . .
* * *
 C. Subject to the provisions of this Chapter, the bylaws may include any provision for the regulation and management of the affairs of the corporation, its rights or powers, the rights, powers or duties of its members, directors or officers, or the directors' qualifications, classification, number or term of office, or fixing their compensation, not inconsistent with law or the articles.
 R.S. 12:224. Board of Directors
* * *
 B. Subject to any limitations, restrictions or reservations in the articles, the bylaws or this Chapter, the affairs of the corporation shall be managed by a board of directors . . . . If not fixed in the articles or by-laws, the number of directors shall be the number elected from time to time by the members . . . . Unless the articles or by-laws provide otherwise, the directors shall hold office for one year and until their successors are chosen and have qualified . . . .
 C. Each director shall hold office for the term for which he was named or elected, and until his successor is elected and qualified. Directors, other than those constituting the first board, shall be elected by the voting members, unless some other method is expressly provided in the articles and except as hereinafter provided in the case of vacancies.
 E. The number, classification, qualifications, compensation, terms of office, manner of election, time and place of meeting, and powers and duties of the directors, may, subject to the provisions of this Chapter, be prescribed by the articles or the by-laws. Except as otherwise prescribed in the articles or bylaws:
* * *
 (4) The members, by vote of a majority in interest of all of the voting members, may, at any special meeting called for the purpose, remove from office any one or more of the directors, notwithstanding that his or their terms of office may not have expired, and may forthwith at such meeting proceed to elect a successor for the unexpired term. Whenever the members of any class or series are entitled to elect one or more directors, the provisions of this subsection shall apply, in respect of the removal of a director or directors so elected, and the election of a successor or successors, to the vote of the members of that class or series, and not to the vote of all of the members . . .
* * *
 (8) . . . The designation of and delegation of authority to a committee shall not relieve the directors of any responsibility imposed on them by law.
 R.S. 12:225. Officers and agents
* * *
 B. Such other officers and agents as may be necessary for the business of the corporation may be appointed by the board of directors or in the manner provided in the by-laws.
 R.S. 12:237. Amendment of articles generally
 A. A corporation may amend its articles in compliance with any method stipulated in its articles . . . .
 R.S. 12:247. Voluntary transfer of assets
 A. A voluntary sale, lease, exchange or other disposition of all or substantially all of the assets of a corporation, including its good will, franchise or other rights, may be authorized by it, in the manner prescribed in this section, upon such terms and conditions as it deems expedient, including an exchange for shares or obligations of another nonprofit, business or foreign corporation.
 B. If the corporation is not insolvent, such authorization may be given only by the members, by vote of two-thirds (or such lesser proportion, not less than a majority, as the articles may provide) in interest of the voting members present . . . . If the corporation is insolvent, such authorization may be given by a vote of two-thirds of the entire board of directors, approved by the voting members as required by R.S. 12:207(D) if immovable property is involved . . . ."
We turn now to your questions which we have divided into four categories, to-wit: Part A through Part D.
A. Queries Regarding the Two NewCorps
 1. Can a NewCorp be created, under Louisiana law, by each hospital service district as a quasi-public, nonprofit, non-stock 501(c)(3) corporation, which will comply with the Open Meetings, Public Records and Public Bid Laws? If so, will the NewCorps be entitled to the statutory exemptions from these public laws, including the exemptions afforded under R.S. 46:1073?
We answer your first question in the affirmative. The Districts are authorized to create a NewCorp as a quasi-public, nonprofit, non-stock 501(c)(3) corporation. Act No. 180, Sections 1(B)(5) and 3(15), R.S. 46:1055(B) and Attorney General Opinion No. 81-1229. The Districts cannot, by delegating their authority to the NewCorps, avoid ultimate responsibility for their respective hospitals and the actions of the NewCorps. Attorney General Opinion No. 96-117. Thus, as quasi-public bodies, the NewCorps are required to comply with the Open Meetings, Public Records and Public Bid Laws. Guste v. Nichols, 564 So.2d 682 (La. 1990) and Attorney General Opinion Nos. 96-117, 95-7 and 79-601. While the NewCorps are subject to the above referenced public laws, they are also afforded the exemptions contained in each, including those afforded by R.S. 46:1073. Attorney General Opinion No. 95-346.
 2. Can each NewCorp serve as an operations and management company for its District? Can the NewCorps also serve as members of the AllianceCorp and as a link from the Districts to the AllianceCorp?
The NewCorps may serve as operations and management companies for their respective Districts. Act 180, Sections 3(15) and 8(A); R.S. 46:1055 and Attorney General Opinion No. 96-117. Further, the NewCorps may serve as members of the AllianceCorp and a link from the Districts to the AllianceCorp. Act 180, Sections 1(B)(5), 3(15) and 8(a), R.S. 12:201(16) and 202, R.S. 46:1072(1) and 1077 and Attorney General Opinion No. 81-1229.
 3. Can the AllianceCorp be the sole Class "A" Member of each NewCorp, having certain reserve powers relating to the governance and operation of each NewCorp, but having no rights to assets upon liquidation? Can each District be the sole Class "B" Member of its NewCorp?
AllianceCorp may be the sole Class "A" Member of each NewCorp, having certain reserve powers relating to the governance and operation of each NewCorp, but having no rights to assets on liquidation. R.S. 12:201(17) and 217(A). Further, each District can be the sole Class "B" Member of its NewCorp. R.S. 12:217(A).
 4. Can the AllianceCorp nominate and elect one member to serve on the Board of each NewCorp? Can the AllianceCorp elect the remaining persons to serve on the Board of each NewCorp from a list of individuals nominated by the Districts? If the AllianceCorp is not satisfied with the nominations, can it require additional nominations? Finally, can NewCorp's directors serve as Commissioners of its District and can the District's Commissioners serve as directors of its NewCorp?
We answer the first three parts of this question in the affirmative. R. S. 12:201(16), 217(A) and 224. We recommend that you submit the last issue regarding cross-service of Directors/Commissioners to the Louisiana Board of Ethics for its disposition.
 5. Can the, AllianceCorp be given the right to approve amendments to the articles of incorporation and by-laws of each NewCorp?
The amendment of articles of incorporation is governed by R.S.12:237. Paragraph "A" provides that a corporation may amend its articles in compliance with any method stipulated in its articles. However, if the amendment would adversely affect the rights of the members of any class or series, Paragraph "C" enables that class to vote on the amendment. Section 222 governs the amendment of by-laws which are reserved to the members or the directors of the corporation. Section 222 further provides that any action of the directors may be changed by the members.
B. Queries Regarding the AllianceCorp
Your questions relating to the AllianceCorp are predicated upon the assumption that the four private, nonprofit hospitals become incorporators and members of the AllianceCorp. Given this assumption, you ask:
 1. Can each NewCorp become a member of the AllianceCorp and serve along with the four private, nonprofit hospitals?
We are of the opinion that the NewCorps can become members of the AllianceCorp along with the four private, nonprofit hospitals. Act 180, Sections 1(B)(5) and 3(15), R.S. 12:201 (16) and (17), 202 and R.S. 46:1055(B) and 1077. In this regard, we conclude that the NewCorps constitute quasi-public, nonprofit, non-stock corporations. As such, they are considered artificial persons and/or members of the AllianceCorp.
 2. Can the AllianceCorp be the "limited parent" of its members, coordinate and integrate the health care services of its members, exercise specified control over its members and be the lead organization for the accomplishment of the purposes and mission of the Alliance?
While the term "limited parent" is not defined, we are of the opinion that the AllianceCorp is not a "parent corporation" of any of its members. A parent corporation is a company owning more than fifty (50%) percent of the voting shares and/or a controlling interest of another company, commonly referred to as a subsidiary, Black's Law Dictionary, 6th edition (1990). A parent corporation is one which has working control through stock ownership of its subsidiary corporations. Conversely, a subsidiary corporation is one which is controlled by another corporation by reason of the latter's ownership of at least a majority of the shares of stock of the other corporation. 18C.J.S. § 5, Parent or Subsidiary Corporations (1990).
Accordingly, AllianceCorp cannot be the "parent" or the "limitedparent" of its members. However, we can find no prohibition against AllianceCorp constituting the lead organization by coordinating and integrating the health care services of its members for the accomplishment of the purposes and mission of the Alliance.
 3. Can the AllianceCorp board of directors be comprised of the AllianceCorp CEO, one person elected by each of the NewCorps, and one person elected by each of the four private, nonprofit hospitals, all of whom, in turn, will elect three or four additional outside directors from the community?
It is the opinion of this office that the AllianceCorp's board of directors can consist of its CEO, one person elected by each of the NewCorps, and one person elected by each of the four private, nonprofit hospitals. Further, the aforementioned directors may, in turn, elect three or four additional outside directors from the community. R.S. 12:224(C) and (E).
 4. Can each of the NewCorps and the four private, nonprofit hospitals remove, at will, the director each of them elects, and can the AllianceCorp board of directors remove any director for cause by a two-thirds (super-majority) vote?
The provisions regarding the removal of members of the board of directors is found at R.S. 12:224(E)(4). As previously noted, it provides for the removal of members of the board of directors by a majority of the members in interest of the corporation. Section 224 does not specifically authorize the removal of directors in the manner set forth in your opinion request. However, Section 224(E)(4) is prefaced with the language "Except as otherwise prescribed in the articles or bylaws:". Accordingly, if the by-laws and/or articles of incorporation provide for another method of removal, it would appear that same would be permissible.
 5. Will the AllianceCorp constitute a private corporation exempt from the Open Meetings, Public Records and Public Bid Laws, and other similar laws applicable to public or quasi-public corporations or bodies?
A corporation is a "public corporation", as distinguished from a "private corporation", when it is created for a public purpose only, connected with the administration of government, and when its whole interests and franchises are the exclusive property and domain of the government itself. National Bank of Commerce in NewOrleans v. Board of Supervisors of Louisiana State University andAgricultural Mechanical College, 206 La. 913, 20 So.2d 264
(1944).
A "private corporation" is generally one created for private purposes and not classified as public, and distinguished from purely public purposes. Miller, et al. v. Davis, et al., 136 Tex. 299,150 S.W.2d 973 (1941). "`Private corporations' are those whose direct objective is to promote private interests, and in which the public has no concern, . . . [which] derive(s) nothing from the government, except the right to be corporations . . . ." Attorney General Opinion Nos. 93-595 and 78-1183.
A "quasi-public corporation" is one affected with a public interest; (i.e., a class of private corporations) which, on account of special franchises conferred on them, owe a duty to the public which they may be compelled to perform. State, ex.rel. Coco v. Riverside Irrigation, Co., Ltd., 142 La. 10,76 So. 216 (1917). Quasi-public bodies are those bodies which are not strictly private bodies. Attorney General Opinion No. 78-1183. This office has consistently held that quasi-public bodies (e.g.,
corporations) constitute those which are: (i) not strictly private bodies, (ii) primarily funded by public funds, and (iii) organized to serve a public purpose or provide a public service. Attorney General Opinion Nos. 93-595, 92-736, 90-271, 84-583, 78-1183, 77-1726 and 75-124. In the instant case, we note the following factors to be relevant: (a) the four private nonprofit corporations will be the incorporators of AllianceCorp; (b) four of the six members of the AllianceCorp will be private, nonprofit hospitals; (c) only two of the eleven directors will be elected by the NewCorps; (d) most of the funding for the AllianceCorp will come from the four private, nonprofit hospitals; (e) AllianceCorp will own none of the assets of either the NewCorps or the Districts; and (f) the NewCorps will function as quasi-public corporations and the Districts will continue to function as public bodies.
Considering the above, it is our opinion that the AllianceCorp will not constitute a public or quasi-public body, but rather a private corporation, exempt from the public laws previously enumerated.
C. Queries Relating to the Affiliation Agreement
You ask the following questions based upon the precept that the NewCorps will enter into a long-term Affiliation Agreement (the "Agreement") together with the four nonprofit hospitals and the AllianceCorp.
 1. Can the Agreement provide that neither the two NewCorps nor their Districts will prepare any changes in an institutional mission or philosophy without the approval of the AllianceCorp?
Initially, it should be noted that the Districts cannot, by delegating their authority, avoid ultimate responsibility for the hospital or the actions of their boards of directors. R.S.12:224(E)(8) and Attorney General Opinion No. 96-117. As previously noted, R.S. 46:1071 and 1077 provide broad and sweeping authority for confecting written agreements to carry out the provisions of hospital health services through joint ventures. Thus, as long as the articles of incorporation and by-laws do not prohibit such a provision, we can find no authority which would pretermit its inclusion.
 2. Can the Agreement provide that each of the NewCorps, acting for their respective Districts, be required to prepare a strategic plan for approval by the District and the AllianceCorp?
We answer this question in the affirmative, citing the reasons set forth in answer to Part C, No. 1, supra.
 3. Can each of the NewCorps, acting for their respective Districts, be required to prepare capital and operating budgets which must be approved by the Districts and AllianceCorp?
We answer this question in the affirmative, citing the reasons set forth in answer to Part C, No. 1, supra. Further, the O M between the Districts and their NewCorps should contain provisions requiring capital and operating budgets to be approved by the respective Districts and AllianceCorp.
 4. Can the Agreement provide that significant changes in programs and services of the NewCorps and the Districts must be approved by the AllianceCorp, and can the AllianceCorp suggest changes in programs and services for each District's hospital?
We answer this question in the affirmative, citing the reasons set forth in answer to Part C, No. 1, supra.
 5. Can the Agreement require that managed care contracts and provider agreements entered into by the NewCorps be approved by the AllianceCorp? Also, can the AllianceCorp, or a separate nonprofit corporation owned or controlled by the AllianceCorp, negotiate with a third-party pay or and enter into managed care contracts or provider arrangements which bind the NewCorps?
We answer your first question in the affirmative, citing the reasons contained in our answer to Part C, No. 1, supra. In answer your second question, it is our opinion that the NewCorps should be a party to any contract, including managed care contracts, if they are to be bound by the provisions of same.
 6. Can the Agreement require that the AllianceCorp shall have the power to approve the sale, encumbrance, or acquisition of institutional assets exceeding an established threshold, annually, for each hospital, said threshold to be based on the relative financial participation of the institution in the Alliance, as well as the institution's financial size in proportion to that of other participants?
We answer this question in the affirmative, citing the reasons set forth in answer to Part C, No. 1, supra.
 7. Can the Agreement provide that the AllianceCorp has the power to require the transfer of assets among the member institutions to promote the goals and objectives of the Alliance, provided that no transfer will be undertaken if it would either damage the long-term viability of the institution or be inconsistent with contractual or bond obligations of the institution?
We answer this question in the affirmative, citing the reasons set forth in answer to Part C, No. 1, supra. Extreme caution should be exercised so that the transfer(s) do not impair any obligations to bondholders and/or do not constitute a prohibited donation under Article VII, Section 14 of the 1974 Louisiana Constitution.
 8. Can the Agreement require the Districts to obtain the approval of the AllianceCorp for any change in debt structure other than the incurring of short-term debt?
We answer this question in the affirmative, citing the reasons set forth in answer to Part C, No. 1, supra. Extreme caution should be exercised so that any change in debt structure would not impair any obligations to bondholders and/or would not constitute a prohibited donation pursuant to Article VII, Section14 of the 1974 Louisiana Constitution. This approval would, of course, be an addition to the approvals required by the statutory provisions pertaining to the incurring of debt applicable to the Districts.
 9. Can the Agreement require that the AllianceCorp has the power to require membership fees from the two NewCorps for the operation and furtherance of the goals and objectives of the Alliance, which membership fees shall take into account the relative financial participation of the institution so as not to damage its long-term viability?
We answer this question in the affirmative, citing the reasons set forth h answer to Part C, No. 1, supra. Extreme caution should be exercised so that the membership fees are reasonable and support the NewCorps' long-term viability.
 10. Can the Agreement require that the two NewCorps recruit and select their own CEO/Administrators, to be approved by the AllianceCorp?
As previously noted, R.S. 12:207(B)(9) empowers the NewCorps to elect or appoint their officers and agents. Further, R.S.12:225(B) authorizes the corporation, through appointment by the board of directors or in the manner provided in its by-laws, to select other officers and agents as may be necessary for the business of the corporation. Accordingly, it is our opinion that the Agreement, alone, could not require the AllianceCorp's approval of the NewCorps' CEOs. Such approval must be authorized by the NewCorps' articles of incorporation and/or by-laws.
 11. Can the Agreement provide that the Districts, acting through their NewCorps, may withdraw and terminate their memberships in the AllianceCorp conditioned upon the payment of a penalty to the AllianceCorp if the terminating member affiliates with a party other than the AllianceCorp within two years after termination?
We answer this question in the affirmative, citing the reasons set forth in answer to Part C, No. 1, supra. We also draw your attention to R.S. 23:921 and the limitations contained therein. Should legal counsel for the Districts conclude that Section 921 is applicable to the Districts, any noncompetition clause in the agreement should conform to the provisions of Section 921.
 12. Can the Agreement provide that the Districts, through their NewCorps, be expelled and have their membership in the AllianceCorp terminated upon an affirmative vote of seventy-five (75%) percent of the directors/appointees of the members of the AllianceCorp and a seventy-five (75%) percent vote of all the directors of the AllianceCorp, having determined that the NewCorps have taken actions which undermine the ability of the Alliance to achieve its mission? Further, can the NewCorps be required to pay penalties for withdrawal from AllianceCorp?
As previously noted, R.S. 12:217(A) provides that membership shall be governed by the rules of admission, retention, suspension and expulsion, which the articles or by-laws prescribe. Accordingly, we are of the opinion that any provisions relating to the withdrawal and/or expulsion of the NewCorps, including the payment of penalties, must be provided for in the articles of incorporation or by-laws of the NewCorps. Inclusion in the Agreement, alone, would not suffice.
 13. Can the Agreement provide that the AllianceCorp has the power to approve admission to, or association with, the AllianceCorp of additional hospitals or other business entities?
While there is no prohibition against the Agreement containing provisions relating to additional memberships, we are of the opinion that it is necessary to make provisions for same in the articles of incorporation and/or by-laws of the other members. R.S. 12:217(A).
 14. Can the Agreement provide that all powers not reserved to the AllianceCorp, be vested in the NewCorps and their respective Districts, including but not limited to the operation of the hospitals; establishment of policies; direction of employees and their compensation, maintenance of medical staff by-laws, rules and regulation; granting and renewal of medical staff membership and privileges; utilization review and quality improvement activity; and control over the institutions' names, marks, and logos?
We answer this question in the affirmative, citing the reasons set forth in answer to Part C, No. 1, supra. Further, R.S.46:1071 and 1077 provide broad and sweeping authority for confecting written agreements to carry out the provisions of hospital health services through joint ventures. Thus, so long as the articles of incorporation and by-laws do not prohibit such a provision, we can find no authority which would pretermit its inclusion.
 15. Can each District intervene in the Agreement and agree to be bound by its provisions?
We are of the opinion that the Districts can intervene in the Agreement and be bound by its provisions under the broad authority contained in R.S. 46:1077. However, the Districts will remain subject to the public laws discussed hereinabove, as well as any applicable constitutional provision, including, but not limited to Article VII, Section 14 of the 1974 Louisiana Constitution. Thus, in the event the terms of the Agreement, as applied to the Districts, conflict with applicable statutory and constitutional laws, said terms will be unenforceable against the Districts. In addition, it may be argued that the term of the contractual intervention should not exceed the terms of office of the Districts' board members authorizing the intervention.
D. Queries Relating to the Operations and Management Agreement
These questions pertain to the proposed operations and management agreement ("O M") to be entered into between the Districts and their respective NewCorps.
 1. Can the O M provide the NewCorps with the power and authority to manage and operate the hospital and other assets and properties of the Districts pursuant to the provisions of the O M, and authorize the NewCorps to act as a link between the Districts and the AllianceCorp?
We answer this question in the affirmative pursuant to the broad and sweeping authority contained in Act No. 180, Sections 1(B)(5), 3(15) and 8(a), R.S. 46:1055(B), 1071 and 1077 and Attorney General Opinion Nos. 96-117 and 79-601.
 2. Can the O M provide that the NewCorps will compensate the CEO-Administrator and other high-end management personnel for the management and operation of the Districts, said compensation to be reimbursed by the Districts?
We answer this question in the affirmative, citing the reasons set forth in answer to Part D, No. 1., supra. We further recommend that you contact the Louisiana Board of Ethics regarding this question to ensure compliance with the State's ethics laws.
 3. Can the O M provide that the Districts will continue to own all of their assets, including those acquired after the execution of the O M?
We answer this question in the affirmative, citing the reasons set forth in answer to Part D, No. 1., supra.
 4. Can the O M provide that the Districts will continue to be responsible for their liabilities, including bonded indebtedness, and provide that any new indebtedness will likewise constitute indebtedness of the Districts?
We answer this question in the affirmative, citing the reasons set forth in answer to Part D, No. 1., supra. In addition, the Districts must also follow the statutory provisions regarding the issuance of debt by the Districts.
 5. Can the O M provide that all revenues of the Districts will continue to be the property of same, including revenues generated and/or received after the execution of the O M? Can it further provide that all monies received from the management and operation of the hospital and other facilities and operations shall be deposited to the accounts of the respective Districts, without the necessity of their deposit to the accounts of the NewCorps?
We answer this question in the affirmative, citing the reasons set forth in answer to Part D, No. 1., supra.
We again emphasize that you consult with appropriate state and federal authorities regarding the application, vel non, of laws and regulations pertaining to ethics for public officers and employees, taxation, anti-trust and audits. We also recommend that you contact appropriate bond counsel with regard to any question or transaction which may pertain to the issuance of bonds and/or outstanding bonds and the corresponding rights of bondholders.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: _________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/Rob, III/JMM/cla