Dear Mr. Triche:
On behalf of the Assumption Parish Police Jury ("Police Jury"), you have requested an opinion of this office regarding the legal status of Fire Departments located within Assumption Parish. According to your request, the Police Jury currently serves as the Fire Board of Assumption Parish and contracts with individual Fire Departments to provide fire protection. Funding for the Fire Departments comes from a tax millage that is distributed by the Police Jury to each Fire Department pursuant to a written contract to provide fire protection within a designated fire protection district.
Enclosed with your request is a copy of a sample contract between Fire Protection District No. 1, for the Parish of Assumption, through the Assumption Parish Police Jury as the governing authority, and a local Volunteer Fire Department.
Specifically, you ask whether the individual Fire Departments that contract with the Police Jury are considered political subdivisions of the State or whether they are considered public bodies at all. You also ask how the legal designation of the Fire Departments relates to compliance with the State public bid law, open meeting law, publication of minutes and budgets, etc. Finally, you ask whether the Police Jury can handle administrative functions of the Fire Departments, such as bill paying, from the individual millage funds allocated to each Fire Department, if such payment is included in the contract between the Police Jury and the Fire Department.
La. R.S. 40:1492 authorizes a parish governing authority to create or enlarge fire protection districts and provides that fire protection districts so created are "subdivisions of the state within the laws of this state relating to the voting and levying of special maintenance taxes, incurring debt, and issuing bonds therefore. . . ." For all other purposes and pursuant to La. R.S. 40:1500, fire protection districts shall constitute public corporations and may enter into such contracts as they consider necessary or desirable to carry out the purposes for which they were created. La. R.S. 40:1496.15 provides that "the governing authority of the parish of Assumption shall be the governing authority of each fire protection district within the parish and shall have all powers and duties provided by law for governing authorities of fire protection districts."
Finally, La. R.S. 33:2101 authorizes a parish or fire district to contract with a volunteer fire department to provide fire protection within the fire protection district created or governed by the parish pursuant to R.S. 40:1492.
As noted above, La. R.S. 33:2101 authorizes the Assumption Parish Police Jury, acting as governing authority of each fire protection district within the parish, to enter into contracts with private entities, such as a Volunteer Fire Department, to provide for fire protection services within statutorily created fire protection districts.
Prior opinions of our office have opined that a volunteer fire department is a quasi-public body if it is primarily funded with public funds, serves a public purpose and renders a public service. See Atty. Gen. Op. Nos. 02-36, 91-162, 90-271, and 84-583. Quasi-public bodies are those bodies which are not strictly private bodies. See Attorney General Opinion No. 78-1183.
In Atty. Gen. Ops. 84-583 and 93-595, this office opined that all quasi-public bodies are required to conduct and file audits pursuant to La. R.S. 24:511, et seq. In Atty. Gen. Op. 02-36, this office opined that the governing authority of a fire district has the right to seek a complete review and audit of the financial records of a volunteer fire department, obtain possession to the records of the volunteer fire department and its equipment, and take control of the bank account if the volunteer fire department is primarily funded by public funds.
As stated above, a volunteer fire department that is primarily funded with public funds, and which serves a public purpose and renders a public service is classified as a quasi-public body and would thus be subject to the audit and oversight authorities of the Legislative Auditor under La. R.S. 24:511 et seq., and subject to a complete review, control and possession of its financial records by the fire protection district or governing authority. In addition, La. R.S. 44:1A(1) specifically states that the Public Record Law (La. R.S. 44:1 et seq.) applies to all public bodies, including "a public or quasi-public nonprofit corporation designated as an entity to perform a governmental or proprietary function." Accordingly, a quasi-public nonprofit volunteer fire department is also subject to the Public Records Law. However, a volunteer fire department, even if a quasi-public body, is not a public entity within the meaning of Public Bid Law (La. R.S. 38:2211A (10)), or a public body within the meaning of Open Meeting Law (La. R.S. 42:4.2A (2)) and therefore is not subject to the Public Bid Law (La. R.S. 38:2211-2293) or Open Meeting Law (La. R.S. 42:4.1-13). Furthermore, the Local Government Budget Act (La. R.S. 39:1301-1315) applies to all political subdivisions, including municipalities, of the state with a general fund or a special revenue fund. A volunteer fire department is not considered a political subdivision and thus is not required to comply with the Budget Act.
Accordingly, it is the opinion of this office that a volunteer fire department governed by the Assumption Parish Police Jury and which is primarily funded with public funds, which serves a public purpose and which renders a public service, is a quasi-public entity and is subject to the Louisiana Public Records Law and subject to the audit and oversight authorities of the Legislative Auditor under La. R.S. 24:511 et seq., and subject to a complete review, control and possession of its financial records by the fire protection district or governing authority, but not subject to the Public Bid Law, Open Meeting Law or Local Governmental Budget Act.
It is the further opinion of this office that, pursuant to the authority provided in La. R.S. 40:1492 et seq., and La. R.S.33:2101, the Assumption Police Jury, acting as the governing authority for the parish fire protection district, may enter into a contract with a Fire Department to handle certain administrative functions of the Fire Department and receive payment for such services from the individual millage funds allocated to each Fire Department.
We trust this adequately responds to your request. If you have any questions or comments, please do not hesitate to contact our office.
With kindest regards,
 Very truly yours,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 BY: ____________________
 RICHARD L. McGIMSEY
 Assistant Attorney General
 ATTACHMENT MAR 14, 2002 OPINION 02-36
47-A-1 Fire Protection Districts
 Mayor Charles A. Bracey The authority of the Town over Town of Roseland the Volunteer Fire Department P.O. Box 302 must be determined on the basis Roseland, LA 70456 if it is primarily funded by public funds, but if not the Town has no rights to documents, equipment, bank accounts or to require an audit.
Dear Mayor Bracey:
This office is in receipt of your request for an opinion of the Attorney General in regard to the Volunteer Fire Department of the Town of Roseland. You indicate there are no paid or full time fire fighters in the Town, and the department is funded by tax revenues and supplemented by amounts raised through volunteer fire department fund raisers. The members of the department have incorporated themselves into a non-profit corporation for purposes of raising funds. A disagreement arose between the leadership of the volunteer fire department and the town municipal government concerning the priority of tax dollar expenditures and the authority of the municipal government to direct the affairs of the volunteer department. The Fire Chief was terminated by the Board of Aldermen. The former fire chief and those volunteers who supported him have used the non-profit corporation to take control of and maintain possession of certain fire department records, equipment and monies raised in connection with the volunteer fire department. However, you further state that the volunteer fire department through its non-profit corporation, in addition to having raised funds, received tax dollars from the general fund of the Town and the Tangipahoa Parish Rural Fire Protection District No. Two. and from State Fire Insurance Rebate monies through the parish government.
It is the position of the former chief that the records of these previous fires, financial records of the non-profit corporation and any other documents removed from the fire department offices are the records of the Roseland Volunteer Fire Department, Inc. and are not municipal or public records and that the Town and its current municipal fire department have no rights to nor any access to these records.
They also assert that the equipment removed from the Town Hall was purchased with these non-profit corporation funds from and by checks issued on the account of the Volunteer Fire Department, Inc. and as such are not municipal property but that of the non-profit corporation.
Finally, it is the position of the former Fire Chief and his supporters within the Volunteer Fire Department, Inc. that the banking account in the name of the non-profit corporation are funds separate and distinct and the exclusive property of the membership of the non-profit corporation and are not subject to use by nor audit by the municipal government.
You maintain that the municipal government should have access to and custody of all fire records, whether in the name of the municipality or the non-profit corporation in that these are public records, and that all items purchased for the Volunteer Department, whether through tax dollars, private donations and fund raisers are in fact for the benefit of and belong to the municipal fire department. Accordingly, all items of property and equipment should be inventoried and located at the municipal fire department facility, and funds having been received for the implied purpose of being utilized in connection with fire protection services of the Town cannot be used for any other purpose. Since the non-profit corporation is no longer providing fire protection services, these funds should be transferred to the municipal fire account at the Town of Roseland.
Based upon these facts you ask the following questions:
 1) What rights does the Town of Roseland's municipal government have to seek complete review and audit of the financial records of the Roseland Volunteer Fire Department, Inc.?
 2) What rights does the Town of Roseland's municipal government have to obtain possession of or access to the fire records in possession of the Roseland Volunteer Fire Department, Inc.?
 3) What rights does the Town of Roseland's municipal government have to obtain possession of and use of fire equipment and/or other equipment purchased by or through the Roseland Volunteer Fire Department, Inc.?
 4) What rights does the Town of Roseland have to obtain possession of and/or control of the banking accounts of the Roseland Volunteer Fire Department, Inc.?
We note in Atty. Gen. Op. 84-583 this office was asked if the volunteer fire department should be required to audit their books wherein the department conducted fund raisers, received donations from the public and the municipality and received revenue sharing. Based upon R.S. 24:517 this office observed that it had been the opinion of this office that all quasi-public bodies are required to conduct and file audits, and quasi-public bodies have been defined as those bodies which are not strictly private bodies and which are "primarily" funded by public funds and serve a public purpose or provide a public service. Inasmuch as the proportionate amount of public funds received was not provided, it was stated, "Therefore, it is not possible to conclusively classify the volunteer fire department. However, conceding that the volunteer fire department serves a public purpose and provides a public service, if it can be determined that it is also funded primarily by public funds, then it should conduct and file an audit."
Similarly, in Atty. Gen. Op. 98-498 in regard to the question of the mayor's authority to appoint the Fire Chief of the volunteer Fire Department this office responded that the questions to be considered are what public funds, if any, are provided, noting that it had previously been opined that a volunteer fire department may be considered a quasi-public body where it received public funds in a budget for such things as expenses of the fire department as utilities, maintenance, truck gas and repair, and other equipment, and the municipality exercises an element of control over the department. In conclusion it was stated that the status of the department is a question of fact to be reached from the guidelines set forth such as the manner in which the department was created, public funding and exercise of control, if any, by the town.
Thus, in response to your questions as to the rights of the Town to seek complete review and audit of the financial records of the Volunteer Fire Department, obtain possession to the records of the Volunteer Fire Department and its equipment, and control of the bank account, we must conclude that this must be determined on the basis if the Department is "primarily" funded by public funds in that it receives tax dollars from the Town, the Fire Protection District and Insurance Rebate monies. However, If not primarily funded by public funds, we would conclude the municipality has no rights to the documents, equipment, bank account or to require an audit of the Volunteer Fire Department simply because it serves a public purpose.
We regret we cannot be of more assistance in response to your inquiry.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 By: ________________________________ BARBARA B. RUTLEDGE Assistant Attorney General
 Opinion No. 90-271 47-A-1 — FIRE PROTECTION DISTRICTS 90-A-1 — PUBLIC FUNDS CONTRACTS
Mr. Stephen E. Fertitta Art. 7, Sec. 14(D) La. Const.: R.S. Secretary/Treasurer 40:1500(C): R.S. 24:517(A) 517.2: Assumption Parish Police Jury Opinion No. 75-124. Post Office Box 518 Napoleonville, Louisiana 70390 1. Fire Protection District can use tax revenues to pay for services of volunteer fire department.
 2. Volunteer fire departments receiving public funds are quasi-public bodies and subject to certain auditing or reporting requirements.
 3. 1990 tax revenues may be used to pay 1990 expenses.
Dear Mr. Fertitta:
Reference is made to your letter requesting an opinion from this office as to the distribution and use of tax monies for fire protection services rendered by volunteer fire departments. You state that Fire Protection District No. 1 of the Parish of Assumption (the "District") has levied a five (5) mills ad valorem tax, beginning with the year 1990, for the purpose of "acquiring, constructing, improving, maintaining and/or operating fire protection facilities and equipment in and for said District, including the purchase of fire trucks and other fire fighting equipment and payment of all related personnel costs . . ." You further state that the District is contemplating the distribution of the tax revenues to the volunteer fire departments located in the District.
In your letter, you ask the following:
 1. Can the Assumption Parish Police Jury, as governing authority of the District, distribute or transfer to each volunteer fire department within the District, a portion of its tax proceeds for the purpose of providing fire protection services within the District?
 2. If yes, would each fire department require an annual audit or what type of financial review would each volunteer fire department be subject to?
 3. Can a volunteer fire department be reimbursed for expenses it has incurred in 1990?
Article 7, Section 14(D) of the Louisiana Constitution of 1974 states:
 "For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual."
In the statute setting forth the powers of fire protection districts, R.S. 40:1500(C) states:
 "Districts may enter into such contracts as they consider necessary or desirable to carry out the purposes for which they were created, including, specifically, contracts with private or public entities pursuant to which water for fire protection purposes shall be made available and paid for by the districts."
This office, in prior opinions, has recognized that volunteer fire departments serve a public purpose and, therefore, based upon the constitutional and statutory authority, could contract with fire protection districts to provide fire protection services. Such contracts should be reduced to writing and include such provisions as to the services to be provided, and the obligations, duties, and responsibilities of the parties. The volunteer fire departments may share in the District's tax revenues in an amount commensurate with the services to be rendered.
R.S. 24:517(A) requires that "all . . . public or quasi-public agencies or bodies or political subdivisions of the state, whose books and accounts are not required to be audited by the legislative auditor . . . shall cause to be conducted annually by a duly qualified certified public accountant an audit or examination of their books and accounts, and shall file the same with the office of the legislative auditor, within six months after the close of the fiscal year."
Furthermore, R.S. 24:517.2 requires private non-profit organizations receiving $20,000 or less in public funds in any fiscal year, to file annually with the legislative auditor a financial report for the fiscal year in lieu of an audit and examination of its books by a certified public accountant.
Opinion No. 75-124, rendered in connection with the legality of political subdivisions paying dues to professional associations, stated that an association which receives as its primary source of income dues paid from appropriated public funds, and serves a public purpose and renders a public service, as it must to receive such appropriated funds, is a quasi-public body.
The following paragraphs from Opinion No. 75-124, although relating to the quasi-public nature of an association, seem equally applicable and relevant to a volunteer fire department:
 "Another conclusion flows when an association has as its primary source of income dues paid from public funds by public officials or agencies as membership subscriptions, and serves a public purpose and renders a public service. We are compelled to conclude that these facts would bring such an association under the general prohibitions on use of public funds found in the Constitution and laws of Louisiana.
 "For example, such an association would be prohibited under Article VII, Section 14 (A) of the new Constitution from loaning or donating their funds to private persons. Such a loan or donation would be doing indirectly with state funds what is clearly prohibited directly. It is axiomatic that such indirect loans or donations are prohibited if direct loans or donations are prohibited
 "In summary then, this office is of the opinion that associations may receive public funds in the form of dues paid by state officials and agencies for membership in an association, provided that the association serves a public purpose and renders a public service and provided the service rendered is commensurate with the amounts of dues paid. In addition, the funds received must be used within the prohibitions on the use of state funds found in the Constitution and laws of Louisiana . . ."
Since the volunteer fire department will receive public funds, serves a public purpose and renders a public service, and thus is a quasi-public body, we are of the opinion that it is obligated to file with the legislative auditor an annual audit or financial statement as required by R.S. 24:517(A) or R.S. 24:517.2, as the case may be.
The tax proposition approved by the electors of the District provides that the tax would commence in the year 1990. With limited exceptions, ad valorem taxes are collected in arrears at the end of a year for operation and maintenance costs incurred in such year. We are of the opinion that the 1990 tax revenues may be used to pay any costs or expenses incurred in 1990 for providing fire protection services.
We hope that the foregoing answers your questions, and if further assistance is required, please do not hesitate to contact us.
Yours truly,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 BY: ________________________ Gunther R. Michaelis Special Assistant Attorney General
 ATTACHMENT January 4, 1985 OPINION NUMBER 84-583 71 . . . Municipalities 78 . . . Officers — Dual Office Honorable Edward Hughes Holding LSA-R.S. 42:62, 42:63, Mayor, Village of Slaughter 33:423, 24:517
Post Office Box 8 If volunteer fire department Slaughter, Louisiana 70777 isfunded primarily by public funds, it should conduct and file an audit.
Dear Mayor Hughes:
You requested an opinion from this office concerning the propriety of certain actions of the municipality and/or its officers.
In your first question you asked if an elected alderman could also serve as a deputy marshall without pay or compensation. LSA-R.S. 42:63 provides, in pertinent part, that:
 D. No person holding an elective office in a political subdivision of this state shall at the same time hold another elective office.
LSA-R.S. 42:62 provides, in part, as follows:
 (2) "Appointive office" means any office in any branch of government or other position on an agency, board, or commission or any executive office of any agency, board, commission, or department which is specifically established or specifically authorized by the constitution or laws of this state or by the charter or ordinances of any political subdivision thereof and which is filled by appointment or election by an elected or appointed public official or by a governmental body composed of such officials of this state or of a political subdivision thereof.
 (3) "Employment" means any job compensated on a salary or per diem basis, other than an elective or appointive office, in which a person is an employee of the state government or of a political subdivision.
In accordance with the statute quoted above, an elected official of a political subdivision of this state shall not at the same time hold a full-time appointive office in the same political subdivision for which he holds an elective office nor shall he be employed by said political subdivision. The appointment of municipal personnel is addressed in LSA-R.S.33:423. It provides, in pertinent part:
 In those municipalities governed by the provisions of R.S. 33:321 through R.S. 33:481 which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and the board of aldermen for appointment of police personnel. Such nominations or recommendations are to be made irregardless of race, color, or creed.
Although the alderman may not be receiving compensation for the performance of his dutes as deputy marshall, the position can be considered as an appointive one and therefore presents a dual office holding problem. This situation also presents a possible Ethics Code violation. Thus, I suggest that you pose this question to the Board of Ethics for Elected Officials at 7434 Perkins Road, Suite B, Baton Rouge, Louisiana 70808-4379.
You also asked for an opinion on the purchasing of gas by a municipality from a business owned by the mayor. This question also poses a possible Ethics Code violation. Therefore, I suggest that you also direct it to the attention of the Board of Ethics at the address given above.
In your last question, you asked if the volunteer fire department should be required to audit their books. You stated that the department conducts fund raisers, receives donations from the public and the municipality and it also receives revenue sharing.
LSA-R.S. 24:517 provides, in part, as follows:
 A. Each municipality, except as otherwise provided herein, and all other public or quasi-public agencies or bodies or political subdivisions of the state whose books and accounts are not authorized to be audited by the legislative auditor, except those whose books and accounts are audited by internal auditors of a parish governing body or authority and whose audits are filed with the office of the legislative auditor, shall cause to be conducted annually, by a duly qualified certified public accountant, and audit and examination of their books and accounts. They shall file the same with the legislative auditor within six months after the close of the period audited, except that the audit and examination of the books and accounts of local housing authorities shall be conducted and filed not less than once every two years, and an audit prepared by an agency of the federal government may be filed in lieu of an audit prepared by a certified public accountant . . .
Applying the statute quoted above, it has been the opinion of this office that all quasi-public bodies are required to conduct and file audits. Quasi-public bodies have been defined as those bodies which are not strictly private bodies and which are primarily funded by public funds and serve a public purpose or provide a public service. You failed to state proportionately the amount of public funds received by the volunteer fire department. Therefore, it is not possible to conclusively classify the volunteer fire department. However, conceding that the volunteer fire department serves a public purpose and provides a public service, if it can be determined that it is also funded primarily by public funds, then it should conduct and file an audit.
It is hoped that this opinion has been of some assistance to you. If we may be of any further assistance, please feel free to contact us.
Very truly yours,
 WILLIAM J. GUSTE, JR. Attorney General
 BY: ___________________ CASSANDRA A. SIMMS Assistant Attorney General
 ATTACHMENT AUGUST 27, 1991 OPINION NO. 91-162
Chief Faron Duhe 90-A-1 — PUBLIC FUNDS AND CONTRACTS La. Const. Art. VII, Sec. 14
Garyville Volunteer Fire Department P.O. Box 553 Public funds received by volunteer Garyville, LA 70051 fire department may be used to establish and maintain a retirement plan.
Dear Chief Duhe:
We have received your opinion request relating to the use of sales tax revenues appropriated by St. John the Baptist Police Jury to the Garyville Volunteer Fire Department (the "Department"). You stated in your letter that the Department is funded annually from a portion of the proceeds of a one-fourth percent (1/4%) sales tax levied in the Parish to provide fire protection throughout the Parish and. . . ." to pay the operation and maintenance cost of fire fighting personnel, including salaries. . . .". You ask if a portion of said tax paid to the Department may be used to establish and maintain a "nonqualified" retirement plan for the benefit of its volunteer fire fighters.
This office has recognized the legality of police jury contributions to volunteer fire departments as not being violative of Article VII Section 14 of the Louisiana Constitution of 1974. Such contributions in actuality are payments for fire protection services rendered by the volunteer fire departments. See Attorney General Opinion No. 78-236. In Attorney General Opinion No. 90-271 this office stated that a volunteer fire department is a quasi-public body since it receives public funds, serves a public purpose and renders a public service. Attorney General Opinion No. 75-124, relating to the use of funds received by quasi-public bodies states ". . . . the funds received must be used within the prohibitions on the use of state funds found in the Constitution and laws of Louisiana. . . .".
We have reviewed the state constitution and various state statutes, as they may relate to volunteer fire departments and their use of public funds, and do not find any legal prohibition to the use by the Department of its revenues in the manner proposed. Therefore, based upon our examination of relevant law on the subject, it is our opinion that the funding of the proposed retirement plan by the Department may be accomplished.
Yours truly,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 BY: _____________________ Gunther R. Michaelis Special Assistant Attorney General
 ATTACHMENT Opinion No. 78-1183 September 20, 1978
R.S. 24:517
Transylvania Water Assoc. falls within definition of quasi-public body and therefore comes within the statutory audit Mr. A.J. Johnson, President requirement. Translyvania Water Association Route 1 Transylvania, Louisiana 71286
Dear Mr. Johnson,
Your opinion request of August 28, 1978 has been assigned to me for reply. As I appreciate it, your question is:
 1. Does the Transylvania Water Association come within the statutory audit requirement?
The Transylvania Water Association falls squarely within the definition of a quasi-public body according to Reports of the Attorney General, No. 75-124, April 7, 1974, page 216, paragraph 3. . . . . . . . . Quasi-public bodies are those bodies which are not strictly private bodies. Strictly private bodies are those whose "direct objective is to promote private interests, and in which the public has no concern,. . . . [which] derive[s] nothing from the government, except the right to be corporations. . . . ."State v. Riverside Irrigation Co., 142 La. 10, 13, 76 So. 216,218 (1917).
All quasi-public bodies come within the statutory audit requirement of La. R.S. 24:517, consequently the Transylvania Water Association shall cause to be conducted annually by a duly qualified certified public accountant an audit and examination of their books and accounts and shall file the same with the legislative auditor within six months after the close of the period audited.
These reports are subject to public inspection.
I hope that the foregoing has sufficiently answered your question, and if you need further assistance, please contact this office.
Sincerely,
 WILLIAM J. GUSTE, JR., Attorney General
 BY: _________________________ VERNON CLAVILLE Staff Attorney