Dear Mr. Kramer:
You advise this office that the Board of Commissioners for Franklin Parish Hospital Service District #1 (aka Franklin Medical Center) desires to create a corporate foundation that will serve to manage and supervise funds for community functions, physician/nursing/allied health scholarships, capital investments, and other special projects.
The Board requests the legal opinion of this office regarding several issues, which we requote from your correspondence.
 1. The current intention is for the hospital service district to provide the initial funding for the creation of the foundation. The foundation's continued existence is to be primarily funded by donations from the public, as well as its own fund-raising activities, with little or no direct monetary support from the hospital service district itself. Would such a corporation be classified as public, private, or quasi-public?
General state law governing all hospital service districts is set forth in R.S. 46:1051, et seq. Note that R.S. 46:1060 provides that a hospital service district shall "constitute a body corporate in law with all the powers of a corporation". The statute further empowers the district to "perform any and all acts in its corporation capacity and its corporate name necessary and proper for the carrying out of the objects and purposes for which the hospital district was created."
Further, the provisions contained in R.S. 46:1071, et seq. are special legislative provisions designed to promote the ability of public hospital service districts to compete in the rendering of health care services. This set of statutes is known by the title of "Enhanced Ability to Compete" and its legislative purposes are set forth in R.S.46:1071, which reads as follows: *Page 2 
 The legislature hereby finds that the market for hospital and health care services is becoming increasingly competitive. The legislature finds that hospital and other health care providers are contracting to engage in economic joint ventures or form partnerships to offer integrated health care services to the public. The legislature finds that this increasing competition is forcing hospitals and other health care providers to develop market strategies and strategic plans to effectively compete. The legislature further finds that hospital service districts are presently at a competitive disadvantage. The legislature hereby declares that the purpose of R.S. 46:1071 through 1076 is to enhance the ability of a hospital service district to compete effectively and equally in the market for health care services. Towards this end, the provisions of R.S. 46:1071
through 1076 shall be construed liberally.
As noted above, R.S. 46:1060 authorizes a hospital service district to act via a corporate entity to provide hospital and health services to residents of the district. This office has previously opined that while a hospital service district may create a wholly owned nonprofit corporation if necessary and proper to provide health care services, a hospital service district may not create a wholly owned business corporation because of the restriction placed on political subdivisions by Louisiana Constitution of 1974, Article 7, Section 14. This Article prohibits a political subdivision from acquiring ownership of a private business corporation and states that "neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise." See Attorney General Opinion 93-391, copy attached.
Thus, in response to your first question, the proposed corporation would necessarily be at least a quasi-public, nonprofit corporation, as the district is prohibited by the constitution from creating and owning a private business corporation.
As a preface to our response to the remainder of your questions, we would note the following. If this proposed nonprofit corporation is a creature of the hospital service district and is acting as the agent of the district in exercising district powers granted by R.S. 46:1051et seq., then "the nonprofit corporation can have no greater powers and authority, nor any less responsibility for compliance with state law, than has the District itself. The District cannot do indirectly or through an intermediary other than it can do or must do directly." See Attorney General Opinion 93-236, copy attached. (Emphasis added).
 2. Will the foundation be subject to open meetings law, public records laws, or Article VII, Section 14 of the Louisiana Constitution, or inspection by legislative auditor if it is classified as a quasi-public corporation? A public corporation? A private *Page 3 
corporation? In the above scenarios, will it retain the exceptions for strategic planning, marketing, etc. in the case of open meetings laws?
As we have noted in our response to your first question, the proposed nonprofit corporation would be a public or quasi-public entity. As such, the nonprofit corporation would be subject to the Open Meetings, Public Records, and Public Bid Laws. See Attorney General Opinion 96-117, copy attached. Note R.S. 12:202.1 (D) provides in pertinent part:
 (D). . . . Any provision of this Section or other provision of law notwithstanding, a quasi-public nonprofit corporation may be created by any such political subdivision of the state under the general nonprofit corporation law of Louisiana with all powers pertaining thereto, including the right to issue negotiable revenue bonds not to exceed fifteen million dollars with interest thereon not to exceed eight per cent per annum which shall be exempted from taxation and which bonds shall constitute negotiable instruments within the meaning of the negotiable instruments law of the state of Louisiana; all properties and assets of whatever nature and description owned or operated by said nonprofit corporation shall be exempted from state and local taxation, including ad valorem taxation; and the governing authority of such quasi-public nonprofit corporation shall be subject to the requirements and provisions of the public contract law, the public meeting law, and the public records law of the state of Louisiana. (Emphasis added).
Public or quasi-public agencies or bodies are subject to audit by the Legislative Auditor. R.S. 24:513 sets forth the powers and duties of the legislative auditor, and provides in Subsection (A)(1)(a) that the legislative auditor has the authority to compile financial statements and to examine, audit, or review the books and accounts of certain specified entities, including ". . . all public boards, commissions, agencies, departments, political subdivisions of the state, public officials and employees, . . . and all other public or quasi-public agencies or bodies, hereinafter collectively referred to as the `auditee'." (Emphasis added).
R.S. 24:513(A)(1)(b) defines quasi-public agency or body, as follows:
 (b) For the sole purpose of this Subsection, a quasi-public agency or body is defined as:
 (i) An organization, either not for profit or for profit, created by the state of Louisiana or any political subdivision or agency thereof, any *Page 4 
special district or authority, or unit of local government to perform a public purpose.
 (ii) An organization, either not for profit or for profit, that is a component unit of a governmental reporting entity, as defined under generally accepted accounting principles.
 (iii) An organization, either not for profit or for profit, created to perform a public purpose and having one or more of the following characteristics:
 (aa) The governing body is elected by the general public.
 (bb) A majority of the governing body is appointed by or authorized to be appointed by a governmental entity or individual governmental official as a part of his official duties.
 (cc) The entity is the recipient of the proceeds of an ad valorem tax or general sales tax levied specifically for its operations.
 (dd) The entity is able to directly issue debt, the interest on which is exempt from federal taxation.
 (ee) The entity can be dissolved unilaterally by a governmental entity and its net assets assumed without compensation by that governmental entity.
 (iv) Any not-for-profit organization that receives and/or expends in excess of twenty-five thousand dollars in local and/or state assistance in any fiscal year. Assistance shall include grants, loans, transfers of property, awards, and direct appropriations of state and/or local public funds. Assistance shall not include guarantees, membership dues, vendor contracts for goods and services related to administrative support for a local or state assistance program, assistance to private or parochial schools, assistance to private colleges and universities, or benefits to individuals.
Attached for your review are Attorney General Opinions 02-0371 (A) and 02-0371 which further discuss the application of R.S. 24:513 to a nonprofit corporation created by a hospital service district.
While a quasi-public or public nonprofit corporation is subject to the public laws referenced, the corporation is also afforded the exemptions contained in those statutes. Further, the nonprofit corporation would also be afforded the exception to the open meetings law created by R.S.46:1073, which states:
 1073. Market strategies and strategic planning
 A. In addition to powers and duties otherwise provided and notwithstanding any law to the contrary, a hospital service district may develop marketing strategies for its existing hospital health services or any hospital health service to be provided in the future *Page 5 
and may develop strategic plans for the development of any future hospital health service or facility.
 B. Notwithstanding the provisions of R.S. 42:4.1, et seq. or any other law to the contrary, a hospital service district commission may hold an executive session for the discussion and development of marketing strategies and strategic plans.
 C. Nothwithstanding the provisions of R.S. 44:1 et seq. or any other law to the contrary, any marketing strategy and strategic plan of a hospital service district commission and the facility owned or operated by the district shall not be public record and shall be confidential but shall be subject to court subpoena.
The court in Joseph vs. Hospital Service District No. 2 of the Parish ofSt. Mary, 805 So.2d 401 (La.App. 1st. Cir. 2001), writ den., 813 So.2d 1083
(La. 2002) recognized that the Enhanced Ability to Compete Act (including R.S. 46:1073) "allows hospital service district commissions to hold executive sessions for the discussion and development of marketing strategies and strategic plans despite the provisions of the Open Meetings Law". See Joseph, supra, at page 403. Thus, meetings of the foundation with respect to marketing strategies and strategic plans would be included within those exempted from the open meetings law by R.S.46:1073.
 3. Could the members of the board governing the hospital service district serve as the board of directors for the foundation? In the alternative, could the foundation's board of directors be appointed by the hospital service district board of commissioners?
We find no limitation in the law prohibiting either scenario. However, in the scenario presented in the instance where the hospital service district board serves as the board of the nonprofit, you may wish to consult with the Louisiana State Board of Ethics to resolve any questions concerning the Code of Governmental Ethics.
Your fourth and fifth questions are combined as follows.
 4. Can the hospital service district retain the right to approve revisions or amendments of the foundations by-laws and articles of incorporation? Can the hospital service district retain the right to revoke any action taken by the foundation? Can the hospital service district retain the right to approve the sale, alienation, or acquisition of any assets by the foundation that exceed a specified dollar amount, regardless of whether the asset is considered as separate property of the foundation? *Page 6 
Again, we find no limitation in the law concerning these proposals. Note that R.S. 46:1077 states:
 1077. Contracts or joint ventures for hospital health services
 In addition to the powers and duties otherwise provided and notwithstanding any other law to the contrary, the board of commissioners of a hospital service district and any corporation or health facility owned or operated by such district or commission may contract with or engage in a joint venture with any person, corporation, partnership, or group of persons to offer, provide, promote, establish, or sell any hospital health service. A hospital service district commission contracting with or engaging in a joint venture with any person, corporation, partnership, or group of persons to offer, provide, promote, establish, or sell a hospital health service shall be presumed to be engaged in a cooperative endeavor as provided by Article VII, Section 14(C) of the Constitution of Louisiana. The commission shall be further presumed to have entered into such contract for the purpose of obtaining a tangible benefit and for a public purpose, and such contract shall not be presumed to be a donation in contravention of Article VII, Section 14(A) of the Constitution of Louisiana.
Insofar as the hospital service district proposes to avail itself of the provisions of R.S. 46:1077 vis-à-vis the nonprofit corporation created by it, this office has opined "clearly, [R.S. 46:1077] is intended to grant hospital service districts broad authority to enter into what might otherwise be considered unorthodox arrangements for the provision of health care." See Attorney General Opinion 96-117, copy attached.
In contrast, when structuring the nonprofit entity, this office has stated that "the [hospital service districts] cannot, by delegating their authority to the [nonprofit corporation], avoid ultimate responsibility for their respective hospitals and the actions of the [nonprofit corporation]". See Attorney General Opinion 96-350, copy attached.
 Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GFNERAL
 BY:__________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL KLK:arg *Page 1 
 ATTACHMENT
OPINION NUMBER 93-391
53 HOSPITALS
90-A-1 CONTRACTS
90 POLITICAL SUBDIVISIONS
110 STATE SURPLUS PROPERTY
A hospital service district may not create a wholly owned business corporation because of the restriction placed on political subdivisions by Louisiana Constitution of 1974. Article 7. Section 14. LSA-R.S. 46:1071
allows a Hospital Service District to hire a physician for the establishment of J general medical practice. LSA-R.S. 46:1074 allows a hospital service district to acquire construct and maintain medical office buildings without the application of public bid and lease law.
Honorable George F. Fox, Jr. Assistant District Attorney Mcintosh, Fox and Lancaster 301 Morgan Street Lake Providence, Louisiana 71254-2693
Dear Mr. Fox:
You have requested an opinion from this office as to whether a Hospital Service District may create a wholly owned business corporation and hire a doctor to operate a private medical practice. Further, you ask whether a Hospital Service District or its wholly owned business corporation may lease a building without public bid and purchase or sell medical equipment without a public bid under LSA R.S. 46:105 et seq.
LSA R.S. 46:1060 provides in pertinent part, a Hospital Service District shall, "constitute a body corporate in law with all the powers of a corporation" and can "perform any and all acts in its corporation capacity and its corporate name necessary and proper for the carrying out of the objects and purposes for which the hospital district was created."
This statute authorizes the Hospital Service District to act in a corporate capacity to provide hospital and health services to residents of the district. Through the corporate capacity a Hospital Service District may create a wholly owned non-profit corporation if necessary and proper to provide health care services. However, a hospital service district would not be able to create a wholly owned business corporation because of the restriction placed on political subdivisions by the Louisiana Constitution of 1974, Article 7, Section 14. It states in pertinent part, "neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise." This Article prohibits a political subdivsion from acquiring ownership of a private business corporation.
Concerning whether a Hospital Service District may hire a *Page 2 
doctor and own and operate a private medical practice LSA R.S. 46:1077
is applicable. It provides in pertinent part as follows:
 1077. Contracts or joint ventures for hospital health services
 In addition to the powers and duties otherwise provided and notwithstanding any other law to the contrary, the board of commissioners of a hospital service district and any corporation or health facility owned or operated by such district or commission may contract with or engage in a joint venture with any person, corporation, partnership, or group of persons to offer, provide, promote, establish, or sell any hospital health service.
LSA R.S. 46:1072 defines "hospital health services" as follows:
 1072. Definitions
 1) "Hospital health services" means but is not limited to any clinical, diagnostic, or rehabilitation service and any administrative, managerial, or operational service incident thereto.
Construed broadly, this definition includes the hiring of a physician for the establishment of a general medical practice. LSA R.S. 46:1071
mandates such a broad application:
 The legislature hereby finds that the market for hospital and health care services is becoming increasingly competitive. The legislature further finds that hospital service districts are presently at a competitive disadvantage. The legislature hereby declares that the purpose of R.S. 46:1071 through 1076 is to enhance the ability of a hospital service district to compete effectively and equally in the market for health care services. Towards this end, the provisions of R.S. 46:1071 through 1076 shall be construed liberally.
Clearly, the contract between the Hospital Service District and *Page 3 
the physician is in furtherance of this broad legislative purpose.
In response to whether a Hospital Service District or its wholly owned business corporation may lease as lessee a building without public bids LSA R.S. 46:1074 applies. This statute allows for a hospital service district to acquire, construct and maintain medical office buildings without the application of public bid and lease law. (LSA R.S. 41:1211
et seq.) Leasing a building to provide medical facilities would fall within the term "acquire" and enable the East Carroll Parish Hospital Service Disctrict to rent the medical facilities.
Attorney General Opinion 93-236 addresses the issue of whether a hospital service district, or its wholly owned non-profit corporation, may purchase medical equipment, furniture and fixtures, without public bid. A copy of this opinion is attached and I trust it will answer your question.
Finally, a hospital service district has the authority to sell surplus equipment and must to so in accordance with R.S. 49:125 or at "public auction". Attorney General Opinion 81-538 addresses the issue and is attached along with a copy of the statute.
I trust this answers your inquiries. Please let me know if we can be of further assistance to you in this matter.
 Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY:__________________________ GLENN DUCOTE Assistant Attorney General RPI/GRD/bb 08321 *Page 1 
 ATTACHMENT
90-A-1 PUBLIC FUNDS CONTRACTS
R.S. 46:1055B; R.B. 46:l051-1077; R.S. 1052
Discussion of the applicability of the Public Bid Law, R.E. 36:2211, et. seq., to the LaSalle Hospital District Mo. 2 Financing Corporation.
 Mr. J. Reed Walters District Attorney P.O. Box 1940 Jena, LA 71342-1940 RICHARD P. IEYOUB, Attorney General
Dear Mr. Walters:
You have requested the opinion of this office on the following issue:
 Is the LaSalle Hospital District No. 2 Financing Corporation, a private non-profit Louisiana corporation whose funds will be self-generated, required to comply with the Public Bid Law (R.S. 38:2211
and following) when it constructs or acquires new facilities?
The applicability of the Public Bid Law to this non-profit corporation turns upon the nature and origin of the corporation and the nature and origin of the funds which will be utilized to fund construction of proposed public works.
As a political subdivision of the state, LaSalle Hospital District No. 2 (the District) is explicitly made subject to the provisions of the Public Bid Law by La.R.S. 46:1055B. Therefore, if the LaSalle Hospital District No. 2 Financing Corporation (the Corporation) is, as the name implies, a creature of the District and is acting as an agent of the District in exercising some of the powers granted to the District by La.R.S. 46:1051-1077, then the non-profit corporation can have no greater power and authority, nor any less responsibility for compliance with state law, than has the District itself. The District cannot do indirectly or through an intermediary other than it can or must do directly.
However, if the LaSalle Hospital District No. 2 Financing Corporation is a non-profit corporation wholly independent of the District and is using funds other than funds made available *Page 2 
to it through the District's income and contracts, then the Corporation is not subject to the Public Bid Law and may contract for the construction or acquisition of new facilities as-it sees fit.
Your request indicates that the funds to be used for this facility are to be generated by a bond issue. If such a bond issue involves debt incurred by the District rather than strictly by the Corporation, these funds would be considered public funds and this would also be cause for application of the Public Bid Law to public works which are to be done with the bond proceeds.
I trust that this answers your inquiry. Please let me know if we can be of further assistance to you in this matter.
 Sincerely,
 RICHARD P. IEYOUB Attorney General
 BY:__________________________ JACK E. YELVERTON First Assistant Attorney General GRD: 430 *Page 1 
 ATTACHMENT
OPINION NUMBER 96-117
71: Municipalities
Discussion of the ownership and operation of public hospitals by municipalities.
 The Honorable John Michael Guidry State Senator, District 14 Post Office Box 387 Baton Rouge, Louisiana 70821
Dear Senator Guidry:
This office is in receipt of your recent request for the opinion of this office regarding the ownership and operation of public hospitals by municipalities.
You first question whether the governing body of a municipality may, by ordinance, create and authorize an independent, uncompensated board to administer a public hospital owned by the municipality, and, if so, if there are any limitations on the extent to which the municipality may delegate its powers and duties to operate the hospital to the board.
Your staff has advised that the municipality in question was incorporated under a special legislative charter. Therefore, we must first advise that the charter should be reviewed to determine whether the charter would in any way limit the ability of the governing authority to create the hospital board. We suggest that you consult with the municipality's attorney in this regard.
Assuming the charter would in no way impede the governing authority, please be advised that it has long been the opinion of this office that the legislature has given control and jurisdiction over the incorporated areas of a municipality to the governing body of each particular municipality. Atty. Gen. Op. Nos. 92-84, 84-749. Furthermore, our research did not reveal any provision of law which would prohibit a municipality from creating a board, such as you describe, to administer the hospital, and we are unaware of any provision of law which would limit the municipality's delegation of power and duty to the board. Of course, the governing authority cannot, by delegating its authority to the board, avoid ultimate responsibility for the hospital or the actions of the board, since the board will be acting on behalf of the municipality. Additionally, since the board will be acting on behalf of the municipal governing authority, it will also be subject to Louisiana's public records act, open meetings laws, public bid laws and ethics laws.
Your third question is whether, under the authority of R.S. 46:1072(2), such a municipally created hospital board would be vested with the powers conferred upon hospital service districts by R.S. 46:1071 — 1077, entitled `Enhanced Ability to Compete' (the "EAC provisions"). *Page 2 
Pertinently, R.S. 46:1072 provides that for purposes of the EAC provisions "hospital service district" means "a hospital owned by a city, parish, or other political subdivision of state . . .", and that "hospital service district commission" means "the governing authority or managing board of a hospital service district . . .". In accordance with the provisions of R.S. 46:1072, it is the opinion of this office that a municipal hospital operated by a municipally created board would be vested with any benefits and powers conferred upon hospital service districts by R.S. 46:1071-1077.
Your fourth question is whether there are any restrictions on the geographic area in which such a board may operate, and in particular, whether such a board could be authorized to administer a facility located within the territorial limits of a neighboring municipality, with the consent of the neighboring municipality.
Both the constitution and statutory laws of this state grant political subdivisions the authority to enter into cooperative endeavor arrangements. We see no reason why the board, acting on behalf of the municipal governing authority, could not enter into a cooperative for the administration of facilities in other municipalities. Particularly pertinent to your question is R.S. 46:1077, which provides in part:
 "In addition to the powers and duties otherwise provided and notwithstanding any other law to the contrary, the board of commissioners of a hospital service district and any corporation or health facility owned or operated by such district or commission may contract with or engage in a joint venture with any person, corporation, partnership, or group of persons to offer, provide, promote, establish, or sell any hospital health service."
Clearly, this statute is intended to grant hospital service districts broad authority to enter into what might otherwise be considered unorthodox arrangements for the provision of health care. However the statute cannot, in our opinion, be interpreted to provide hospital service districts (or the municipality in question) with the ability to act extrajudicially unless a significant "hospital health service" will thereby be provided to the citizens the district or municipality is bound to serve.
We have not been provided information with regard to the type of facility located in the neighboring municipality, and, therefore, have no information as to whether or how the board's administration of a facility located in another town would foster the health needs of the citizens of the municipality of the board's domicile. Furthermore, it is the opinion of this office that a board created by a municipality to administer a municipal hospital could be not be granted any greater authority or power than that possessed by the municipality itself. Clearly, a municipality has no obligation, power or authority to provide for the health and welfare of citizens of adjoining municipalities. Therefore, we must caution you that the administration by one municipality (or its board) of a facility located in another municipality may be ultra vires if the obligation undertaken is substantially inconsistent with or beyond the scope of the first municipality's obligations or authority with respect to its own citizens. (In accord: Atty. Gen. Op. Nos. 95-141, 90-651). *Page 3 
It is noted that in Atty. Gen. Op. 92-219, this office stated:
 "LSA-R.S. 46:1077 provides authority for the board of commissioners of a hospital service district to contract with or engage in a joint venture or cooperative endeavor with virtually any entity, to offer, provide, promote, establish, or sell a hospital health service . . . Such action can be taken by the board of commissioners of the district without the participation of the police jury. By such action, a district may extend services into an area outside of its boundaries . . . In summary, boundaries of the district may be altered, even to the extent that they overlap other hospital service districts by the police jury, or the board of commissioners may enter into a wide range of agreements with other entities to provide health services outside the district's boundaries. However, the hospital service district's board of commissioners may not, on its own, extend its services into an area outside its boundaries." (Emphasis added).
Clearly, the highlighted portion of the above-quoted language could be misinterpreted to mean that hospital service districts can engage in all sorts of endeavors beyond their own boundaries. However, it is important to note that that opinion addressed the provision of service by a parochial hospital service district into other areas of the parish it was created to serve. It did not address the issue of whether a political subdivision can act, or authorize a board to act on its behalf, extra-territorially or in a manner beyond the scope of its authority or purpose. Opinion No. 92-219 did not address, nor should it be interpreted as sanctioning, the provision of any hospital health service that did not directly benefit the hospital health needs of the citizens the district was created to serve.
We trust the foregoing to be of some assistance. You have asked that we address some rather broad questions, and we have tried to answer them as clearly and comprehensively as possible. Should you need further assistance with regard to specific factual scenarios, we will be happy to try to address these issues with more particularity.
 Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: JANNE-MARIE ZERINGUE BARHAM Assistant Attorney General RPI:JMZB:cla *Page 1 
 ATTACHMENT
OPINION NUMBER 02-0371 (A)
107-A SPECIAL DISTRICTS
La.R.S.24:513; La.R.S. 46:1076
Particular joint venture is not a quasi public agency subject to audit by the legislative auditor.
 Mr. J. Lee Wimberley, Jr. Vidrine Wimberley Attorneys at Law 318 South Main Street P.O. Drawer 305 Church Point, LA 70525
Dear Mr. Wimberley:
You requested reconsideration of the opinion of this office that found, based upon the facts submitted in the original opinion request, that the Acadia-St. Landry Hospital Home Health, LLP (the "Venture") is a quasi-public agency subject to audit by the Legislative Auditor pursuant to R.S. 24:5113.
R.S. 24:513 sets forth the powers and duties of the legislative auditor, and provides in Subsection (A)(1)(a) that the legislative auditor has the authority to compile financial statements and to examine, audit, or review the books and accounts of certain specified entities, including ". . . all public boards, commissions, agencies, departments, political subdivisions of the state, public officials and employees, . . . and all other public or quasi public agencies or bodies, hereinafter collectively referred to as the `auditee'." (Emphasis added).
R.S. 24:513(A)(1)(b) defines quasi public agency or body, as follows:
 (b) For the sole purpose of this Subsection, a quasi public agency or body is defined as:
 (i) An organization, either not for profit or for profit, created by the state of Louisiana or any political subdivision or agency thereof, any special district or authority, or unit of local government to perform a public purpose.
 (ii) An organization, either not for profit or for profit, that is a component unit of a governmental reporting entity, as defined under generally accepted accounting principles. *Page 2 
 (iii) An organization, either not for profit or for profit, created to perform a public purpose and having one or more of the following characteristics:
 (aa) The governing body is elected by the general public.
 (bb) A majority of the governing body is appointed by or authorized to be appointed by a governmental entity or individual governmental official as a part of his official duties.
 (cc) The entity is the recipient of the proceeds of an ad valorem tax or general sales tax levied specifically for its operations.
 (dd) The entity is able to directly issue debt, the interest on which is exempt from federal taxation.
 (ee) The entity can be dissolved unilaterally by a governmental entity and its net assets assumed without compensation by that governmental entity.
 (iv) Any not-for-profit organization that receives and/or expends in excess of twenty-five thousand dollars in local and/or state assistance in any fiscal year. Assistance shall include grants, loans, transfers of property, awards, and direct appropriations of state and/or local public funds. Assistance shall not include guarantees, membership dues, vendor contracts for goods and services related to administrative support for a local or state assistance program, assistance to private or parochial schools, assistance to private colleges and universities, or benefits to individuals.
In the original opinion, we were advised that the Venture was created by the Acadia-St. Landry Hospital Service District No. 1 (the "District" or the "Hospital") and Acadian Home Care, Inc. ("Acadian") for the provision of home health care services to residents of the Hospital's service district, including private pay patients. We were also advised by the District's CPA that the Venture was considered a component unit of the District. Based upon that information, we opined that the Venture was a quasi public agency as defined in R.S. 24:513(A)(1)(b) and thus subject to audit by the Legislative Auditor.
In your request for reconsideration, you furnished this office with the following additional or revised information:
1. The Hospital is not a Venture partner. The "Hospital" did not form the Venture, in fact the Hospital is not a party to the Venture. Rather, the Venture was entered into between Acadia-St. Landry Home Health, Inc. (hereafter "Company"), a non-profit corporation, and Acadian HomeCare, Inc. (hereinafter "Acadian"). The Company is a body corporate capable of entering into the Venture. The parties to the Venture *Page 3 
together registered the Venture as a Registered Limited Liability Partnership solely to protect each party from the other party's non-venture liabilities.
2. The Venture's operations are capitalized solely by Acadian, a private, Louisiana business corporation. Neither the Hospital nor the Company makes any capital contributions to the Venture so public funds are not expended by the Venture. The Venture does not receive tax proceeds, nor local or state assistance of any nature whatsoever. The sole financial obligation of the Hospital to the Venture was the contribution of the use of surplus furniture, equipment and inventory to initially establish and furnish the Venture's office on behalf of the Venture partner, the Company These items were surplus items remaining after the Hospital's home health agency ceased operations. (Section 5.6 of the Articles of Joint Venture).
3. The Venture was created in anticipation of the drastic changes in the method of reimbursement for home health services by the Medicare Program. In 2000, Medicare instituted a prospective payment system for home health that prevented the Hospital from continuing to operate its home health agency effectively.
4. To ensure that home health care services continued to be provided in the Acadia-St. Landry area, the Company entered into the Venture with Acadian to operate a branch office of Acadian in Church Point. Acadian's branch office which participates in the Venture is only one of nine home health offices operated by Acadian. The Venture provides home health services not only to residents of the Hospital's service district, but also to other areas. Many of the patients serviced by the Venture have absolutely no relationship with the Hospital, and the Hospital's patients only account for a portion of the services provided by the Venture.
5. The Hospital does not participate in the governance of the Venture and cannot exercise control over the Venture or its operations. In addition, the Company participates equally in the governance of the venture but cannot exercise control over the Venture or its operations. (Section 6.3 of the Articles of Joint Venture.).
6. There was a miscommunication between the undersigned and the Hospital's accountant, as the Hospital accountant has concluded, under the guidelines of the Governmental Accounting Standards Board Statement ("GASB") 14, does not treat the Venture as a component unit nor has the Venture previously been treated as a component unit of the Hospital. See the Hospital accountant's letter attached hereto as Exhibit A.[1] *Page 4 
7. Other information which you supplied concerning the determination of the Venture as a component unit includes:
 a. The Venture has separate corporate powers which distinguishes it as being legally separate from the Hospital. The Venture is a registered limited liability partnership comprised of Acadia-St. Landry Home Health, Inc. a Louisiana non-profit corporation and Acadian HomeCare, Inc. a Louisiana business corporation. The Venture is a person separate and apart from the Hospital, and has its own corporate powers, including the capacity to: (i) have its own name, (ii) sue and be sued and (iii) acquire and alienate property.
 b. The Hospital does not appoint a majority of the Venture's governing body. The Hospital does not have the power to appoint any member of the Venture's governing body. The Company is authorized to appoint only one of two representatives comprising the Venture's governing body, with its representative holding 50 of 100 votes.
 c. The Hospital is not financially accountable for the Venture as a result of fiscal dependency. Neither the Hospital nor the Company is obligated to provide any financial support to the Venture. The Venture's governing body is autonomous and does not require the Hospital's approval of its budget or its rates or charges. Moreover, the Hospital cannot unilaterally: (i) approve or modify the budget or (ii) set rates or charges. The Venture is not authorized to levy taxes, or issue bonded debt.
 d. In the Hospital CPA's professional judgement, the Venture should not be included in the reporting entity because, due to the nature and significance of its relationship with the Hospital, its exclusion does not render the financial statements incomplete or misleading. The Hospital's CPA is of the opinion that "exclusion of the Venture as a component unit of the Hospital will not cause the Hospital's financial statements to be incomplete or misleading." The CPA states that "the Venture is not a component unit of the Hospital, but reported in the Hospital's financial statement as a joint venture in which there is an equity interest, as provided in Paragraph 73 and 75 of GASB 14."
 e. The Venture is not fiscally dependent on the Hospital or the Company. The Venture has no debt and has never had an operating loss.
 f. The revenues ultimately derived by the Hospital from the Venture constitute less than 5% of its gross revenues. *Page 5 
 g. The Hospital is not able to impose its will on the Venture. Decisions regarding the Venture cannot be vetoed, overruled or modified by the Hospital. No member of the Board of Commissioners of the Hospital serve on the governing body of the Venture. The Company can only remove one of two members of the governing body at will.
 h. Management personnel and the entire staff of the Venture are employees of Acadian, and cannot be appointed, hired, reassigned or dismissed by the Hospital.
 i. Neither the Hospital nor the Company can access any of the Venture's resources. Upon termination of the Venture the Company retains a right to reassume the leased premises subject to any existing lease obligations. GASB-14 clearly notes that an interest in the remaining assets of an entity when liquidated is not considered to provide the government entity with access to the entity's resources.
 j. All Venture operating capital is provided by Acadian. The Hospital is not legally required nor has it assumed the responsibilities to finance the other entity's deficits or financially support the other entity.
 k. The Venture does not provide any services to the Hospital nor does it receive any revenues from the Hospital. All services provided by the Venture are provided to private individuals.
We must consider this additional/corrected information in light of the definition found in R.S. 24:513(A)(1)(b), as follows:
(i) The Venture was not created by a political subdivision or agency of the State, nor a special district or authority or a unit of local government. The Venture was created by the Company, a non-profit corporation created by the District, a political subdivision of the State. [R.S. 24:513(A)(1)(b)(i)].
(ii) The Venture is not a component unit of a governmental reporting entity, as defined under generally accepted accounting principles. [R.S.24:513(A)(1)(b)(ii)].
(iii) The Venture, while created to perform a public purpose, does not have one or more of the following characteristics:
 (aa) The governing body is elected by the general public.
 (bb) A majority of the governing body is appointed by or authorized to be appointed by a governmental entity or individual governmental official as a part of his official duties. *Page 6 
 (cc) The entity is the recipient of the proceeds of an ad valorem tax or general sales tax levied specifically for its operations.
 (dd) The entity is able to directly issue debt, the interest on which is exempt from federal taxation.
 (ee) The entity can be dissolved unilaterally by a governmental entity and its net assets assumed without compensation by that governmental entity.
 [R.S. 24:513(A)(1)(b)(iii)].
(iv) The Venture does not receive and/or expend in excess of twenty-five thousand dollars in local and/or state assistance in any fiscal year. Assistance shall include grants, loans, transfers of property, awards, and direct appropriations of state and/or local public funds. Assistance shall not include guarantees, membership dues, vendor contracts for goods and services related to administrative support for a local or state assistance program, assistance to private or parochial schools, assistance to private colleges and universities, or benefits to individuals. [R.S. 24:513(A)(1)(b)(iv)].
Based upon the additional and corrected information you supplied this office, it is the opinion of this office that the Venture is not a quasi public agency for purposes of R.S. 24:513.
Trusting that this adequately responds to your request, we remain
 Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY:__________________________ MARTHA S. HESS Assistant Attorney General RPI/MSH *Page 1 
 ATTACHMENT
OPINION NUMBER 02-0371
107-A SPECIAL DISTRICTS
La.R.S.24:513; La.R.S. 46:1076
Particular joint venture is a quasi public agency subject to audit by the legislative auditor.
 Mr. J. Lee Wimberley, Jr. Vidrine Wimberley Attorneys at Law 318 South Main Street P. O. Drawer 305 Church Point, LA 70525
Dear Mr. Wimberley:
You requested the opinion of this office concerning whether the Acadia-St. Landry Hospital Home Health, LLP (the "Venture") is a quasi-public agency subject to audit by the legislative auditor. The Venture was formed as a joint venture between the Acadia-St. Landry Hospital Service District No. 1[1] (the "District" or the "Hospital") and Acadian Home Care, Inc. ("Acadian") for the provision of home health care services to residents of the Hospital's service district, including private pay patients.
You advised that the arrangement between the Hospital and Acadian is a cooperative endeavor authorized under La.Const. Art. VII, Sec. 14 and R.S. 46:1077. You advised that the Venture's operations are capitalized solely by Acadian. The Hospital does not make any capital fund contribution to the Venture. The Hospital did contribute the use of surplus furniture and equipment together with an initial supply of surplus inventory. This property was valued at $20,000 which was the same value given to the contributions made by Acadian. The Articles of Joint Venture provide in Section 5.1 that the interests of the Venturers in any gross profits and their respective shares in any losses and/or liabilities are to be divided 50/50.
We contacted the CPA for the District and inquired as to whether the Venture was treated as a component unit of the Hospital under generally accepted accounting principles. We were advised that the Venture is included in the Districts' financials as a component unit.
R.S. 24:513 sets forth the powers and duties of the legislative auditor, and provides in Subsection (A)(1)(a) that the legislative auditor has the authority to compile financial *Page 2 
statements and to examine, audit, or review the books and accounts of certain specified entities, including ". . . all public boards, commissions, agencies, departments, political subdivisions of the state, public officials and employees, . . . and all other public or quasi publicagencies or bodies, hereinafter collectively referred to as the `auditee'." (Emphasis added).
R.S. 24:513(A)(1)(b) defines a quasi public agency or body in pertinent part as follows:
 "(b) For the sole purpose of this Subsection, a quasi public agency or body is defined as:
 (i) An organization, either not for profit or for profit, created by the state of Louisiana or any political subdivision or agency thereof, any special district or authority, or unit of local government to perform a public purpose.
 (ii) An organization, either not for profit or for profit, that is a component unit of a governmental reporting entity, as defined under generally accepted accounting principles." (Emphasis added)
Comparing the facts stated above to the definition contained in R.S.24:513(A)(1)(b), it is the opinion of this office that the Venture is a quasi-public agency for purposes of submitting an audit to the legislative auditor.
First, the Venture is a nonprofit organization created by a political subdivision of the state to perform a public purpose. A hospital service district is a political subdivision of the state. R.S. 46:1072(2). Joint ventures entered into by a hospital service district pursuant to R.S.46:1077 are presumed to have been entered for a public purpose. Thus the Venture is a quasi-public agency under R.S. 24:513(A)(1)(b)(i). Secondly, the Venture is a quasi public agency under R.S.24:513(A)(1)(b)(ii) as the Venture is considered a component unit of the District under generally accepted accounting principles.
Please note that the financial statements of quasi public agencies "shall be audited or reviewed by licensed certified public accountants subject to Paragraphs (5) and (6)" of R.S. 24.513(A), but may be audited by the legislative auditor pursuant to R.S. 24:513(A)(4). R.S.24:513(A)(3). This is qualified by R.S. 24:513(A)(4), which provides in pertinent part:
 "(4) Paragraph (3) of this Subsection and Subsection B notwithstanding, the legislative auditor may audit or investigate a local auditee only in those instances when: *Page 3 
 (a) The local auditee has failed after thirty days written notice from the legislative auditor to comply with the provisions of this Section relating to timely audits.
 (b) The Legislative Audit Advisory Council and the legislative auditor have determined that the local auditee is unable to pay for an audit by a licensed certified public accountant.
 (c) The local auditee exhibits a record of egregious control deficiencies and failures to comply with laws and regulations.
 (d) The legislative auditor has received complaints of illegal or irregular acts with respect to the local auditee.
 (e) The local auditee, after requesting proposals for audit services, receives less than three proposals from licensed certified public accountants or the local auditee receives three or more proposals and the local auditee rejects all proposals for cause, including but not limited to excessive cost.
 (f) In the opinion of the legislative auditor and the Legislative Audit Advisory Council the best interest of the state of Louisiana would be served by his audit of the local auditee.
In lieu of examinations by the legislative auditor, the legislative auditor may, at his discretion, accept an audit or review report prepared by a licensed certified public accountant, provided that (i) such audit or review is performed in accordance with generally accepted governmental auditing standards and the Louisiana Governmental Audit Guide and (ii) the legislative auditor has approved the engagement letter.
Trusting that this adequately responds to your request, we remain
 Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY:__________________________ MARTHA S. HESS Assistant Attorney General RPI/MSH *Page 1 
 ATTACHMENT
OPINION NUMBER 96-350
Syllabus
13-A: Corporations 53: Hospitals 90-A-2: Public Funds: Loans, Pledges or Grants 90-B-4: Public Meetings 90-C: Public Records Article
VII, Section 14 of the 1974 Louisiana Constitution R.S. 12:201-203 R.S.12:207 R.S. 12:210 R.S. 12:217-218 R.S. 12:222 R.S. 12:224-225 R.S. 12:237
R.S. 12:247 R.S. 46:1055 R.S. 46:1071-1073 R.S. 46:1077
Addresses thirty questions pertaining to the legality of the corporate structure and/or joint venture between hospital service districts, quasi-public, for-profit and nonprofit corporations for the provision of healthcare services.
Walter P. Reed District Attorney, 22nd Judicial District Washington — St. Tammany Parish 905 Pearl Street Franklinton, LA 70438
Donald N. Kearns Asst D.A., 22nd Judicial District Washington — St. Tammany Parish 905 Pearl Street Franklinton, LA 70438
William J. Jones, Jr. Attorney at Law Post Office Box 1268 Covington, LA 70433
Dear Messers. Reed, Kearns Jones:
You have requested an opinion of the Attorney General on behalf of the St. Tammany Parish Hospital Service Districts Nos. 1 and 2 (the "Districts"). The Districts were created pursuant to Act No. 180 of 1984, as amended by Acts 353 of 1986, 999 of 1991 and 570 of 1992 ("Act 180"). The Districts have been providing medical care to the community on a nonprofit basis since 1954.
You state that the Districts have determined that in order to exist and fulfill their statutory mission and duty in today's health care environment, it is necessary for them to join with four private, nonprofit hospitals located in Orleans and Jefferson Parishes, to-wit: Children's Hospital, Ochsner Foundation Hospital, Pendleton Memorial Methodist Hospital and Touro Infirmary (the "Alliance").
A summary of the Alliance is set forth in Exhibit 1 entitled "Summary For Participation In The Alliance By St. Tammany Parish Hospital Service District No. 1 ("St. Tammany Parish Hospital") and St. Tammany Hospital Service District No. 2 ("Slidell Memorial Hospital Medical Center"), Prepared as of July 30, 1996". Exhibit 1 is attached hereto. *Page 2 
To accomplish the purposes of the Alliance, a private, nonprofit, non-stock 501(c)(3) corporation will be created and referred to as AllianceCorp. AllianceCorp will be the "limited parent" and leader of the Alliance of the six nonprofit hospitals. These hospitals will retain their identities as separate institutions and will continue to own their respective assets.
The Districts will each create a quasi-public nonprofit corporation referred to as NewCorp. The two NewCorps and the four private, nonprofit hospitals will be members of AllianceCorp. Each NewCorp will be the link between its District and AllianceCorp.
AllianceCorp will enter into an affiliation agreement (the "Agreement") with the four private, nonprofit hospitals and the two NewCorps. The Districts will intervene and be bound by the provisions of the Agreement. Each District will enter into an Operations and Management Agreement ("OM") with its NewCorp.
You submit that the Alliance will constitute a joint venture and cooperative endeavor to provide an integrated health care delivery system, offering high quality, locally controlled, cost-effective health care services for the benefit of the public. It will also enable its members to compete in a managed care marketplace by eliminating excessive duplication.
You further submit that the contributions made by members to the Alliance will be equivalent to or exceeded by the benefit each member and the public receives from the cooperative endeavor created by the Alliance.
The model for the Alliance consists of three phases, to-wit: Initiation Phase, Formation Phase and Alignment Phase. You request this opinion in order to determine whether there are any legal obstacles that would preclude the Districts and their respective NewCorps from participating in the Formation Phase of the Alliance as set forth in Exhibit 1.
You present thirty questions for our consideration. They will be answered in the order of presentation. We deem the following constitutional and statutory provisions, or excerpts thereof, to be applicable to the issues presented.
 "Act No. 180 of 1984 Section 1. Creation; Limits; Purposes
 A. There are hereby created two hospital service districts in St. Tammany Parish, hereafter to be termed the St. Tammany Parish Hospital Service District No. 1 and the St. Tammany Parish Hospital Service District No. 2. . . . *Page 3 
 * * * B. Each district is created for the following purposes:
 * * * (5) To cooperate with other public and private institutions and agencies engaged in providing health services to the public.
 * * * Section 3. Powers, duties, and responsibilities of each board of commissioners
 In addition to any powers, duties, and responsibilities defined elsewhere in this Act, each commission shall have the following powers, duties, and responsibilities for its respective district:
 * * * (15) To establish, maintain, and carry on its activities through one or more profit or nonprofit corporations for the benefit of the district.
 * * * (18) To do any and all things except as limited by the Louisiana Constitution which are necessary for and to the advantage of health care facilities. . . .
 * * * Section 8. Corporate status and powers of each district; evidence of acts and proceedings
 A. Each hospital service district created in this Act shall constitute a body corporate in law with all the powers of a corporation . . . and to do and perform any and all acts in its corporate capacity and its corporate name necessary and proper for the carrying out of the objects and purposes for which the hospital service district was created. . . . *Page 4 
 R.S. 46:1055. Powers and duties of commission
 * * * B. In addition to the powers and duties set forth in Subsection A of this Section, the commission may enter into a special services agreement with any person, including but not limited to a hospital management firm or hospitals, to manage, operate, and administer a hospital or hospitals, or any part thereof, under the control of the commission for the benefit of the hospital service district. . . .
 R.S. 46:1071. Legislative findings and purpose
 The legislature hereby finds that the market for hospital and health care services is becoming increasingly competitive. The legislature finds that the hospital and other health care providers are contracting to engage in economic joint ventures or form partnerships to offer integrated health care services to the public. The legislature finds that this increasing competition is forcing hospitals and other health care providers to develop market strategies and strategic plans to effectively compete. The legislature further finds that hospital service districts are presently at a competitive disadvantage. The legislature hereby declares that the purpose of R.S. 46:1071 through 1076 is to enhance the ability of a hospital service district to compete effectively and equally in the market for health care services. Towards this end, the provisions of R.S. 46:1071
through 1076 shall be construed liberally.
 R.S. 46:1072. Definitions
 As used in this Part the following words and phrases shall have the following meanings ascribed for each unless the context clearly indicates otherwise:
 (1) `Hospital health services' means but is not limited to any clinical, diagnostic, or rehabilitation service and any administrative, managerial, or operational service incident thereto.
 R.S. 46:1073. Market strategies and strategic planning
 A. In addition to powers and duties otherwise provided and notwithstanding any law to the contrary, a hospital service district may develop marketing strategies *Page 5 
for its existing hospital health services or any hospital health service to be provided in the future and may develop strategic plans for the development of any future hospital health service or facility.
 B. Notwithstanding the provisions of R.S. 42:4.1 et seq. or any other law to the contrary, a hospital service district commission may hold an executive session for the discussion and development of marketing strategies and strategic plans.
 C. Notwithstanding the provisions of R.S. 44:1 et seq. or any other law to the contrary, any marketing strategy and strategic plan of a hospital service district commission and the facility owned or operated by the district shall not be public record and shall be confidential but shall be subject to court subpoena.
 R.S. 46:1077. Contracts or joint ventures for hospital health services
 In addition to the powers and duties otherwise provided and notwithstanding any other law to the contrary, the board of commissioners of a hospital service district and any corporation or health facility owned or operated by such district or commission may contract with or engage in a joint venture with any person, corporation, partnership, or group of persons to offer, provide, promote, establish, or sell any hospital health service. A hospital service district commission contracting with or engaging in a joint venture with any person, corporation, partnership, or group of persons to offer, provide, promote, establish, or sell a hospital health service shall be presumed to be engaged in a cooperative endeavor as provided by Article VII, Section 14(C) of the 1974 Louisiana Constitution. The commission shall be further presumed to have entered into such contract for the purpose of obtaining a tangible benefit and for a public purpose, and such contracts shall not be presumed to be a donation in contravention of Article VII, Section 14(A) of the 1974 Louisiana Constitution.
 R.S.12:201. Terms defined
 As used in this Chapter, unless the context requires otherwise,
 * * * (16) `Member' means each natural or artificial person admitted to membership in the corporation, and, unless the context indicates otherwise, includes shareholders. *Page 6 
 (17) `Membership' means an interest in a corporation entitling the holder thereof to participate in the control of the corporation or to a pro rata share of its net assets upon dissolution.
 R.S. 12:202. Incorporation
 One or more natural or artificial persons capable of contracting may form a nonprofit corporation under this Chapter.
 R.S. 12:203. Articles of Incorporation
 * * * B. The articles shall set forth:
 * * * (9) Whether the corporation is to be organized on a stock basis or a non-stock basis, or both;
 (10) If organized in whole or in part on a stock basis:
 (a) The aggregate number of shares which the corporation shall have authority to issue;
 (b) If the shares are to consist of one class only, the par value of each share, or a statement that all of the shares are without par value;
 (c) If the shares are to be divided into classes or series, the number of shares of each class or series;. . . .
 R.S. 12:207. General powers
 A. A corporation shall have the power to perform any acts which are necessary or proper to accomplish its purposes as expressed or implied in the articles, or which may be incidental thereto. *Page 7 
 B. Without limiting the grant of power contained in subsection A of this section, it is hereby specifically provided that every corporation shall, subject to the provisions of subsection D of this section, have authority:
 * * * (5) In any legal manner to acquire, hold, vote and use, alienate and encumber, and to deal in and with, shares, memberships, or other interests in, or obligations of, other nonprofit, business of foreign corporations, associations, partnerships, joint ventures, individuals or governmental entities;
 * * * (9) To elect or appoint officers and agents. . . .
 R.S. 12:210. Members, shareholders and certificates
 Except as provided in R.S. 12:209:
 (A) A corporation may be organized on either a stock basis or a non-stock basis or both, as set forth in its articles.
 (B) The shares of corporations organized in whole or in part on a stock basis shall be in such classes, series and par values (or without par value) as the articles shall provide. . . .
 R.S. 12:217. Classes and qualifications of membership
 A. Membership shall be of the classes, and shall be governed by the rules of admission, retention, suspension and expulsion, which the articles or by-laws prescribe; provided that all rules shall be reasonable, germane to the purpose of the corporation, and equally enforced as to all members of the same class.
 R.S. 12:218. Membership dues; assessments
 A. Corporations may levy dues or assessments, or both, upon their members, but only in accordance with authority conferred either by the articles or the by-laws. *Page 8 
 B. Dues or assessments, or both, may be levied upon shares and non-shareholding members of all classes and series alike, or in different amounts or proportions, or upon a different basis, upon shares or non-shareholding members of different classes or series, which shall be uniform as to all shares or all non-shareholding members of the same class or series. . . .
 C. The articles or by-laws may include provisions for the cancellation of membership, and for the forfeiture of shares, upon reasonable notice, for nonpayment of dues or assessments, and for the reinstatement of membership or shareholder status.
 R.S. 12:222. Bylaws
 A. The members or the directors of a corporation may make, amend and repeal the bylaws of the corporation, subject always to the power of the members to change the action of the directors. Unless the articles or bylaws provide otherwise, the powers hereby conferred shall be exercised by a majority vote of the directors or the voting members of the corporation. . . .
 * * * C. Subject to the provisions of this Chapter, the bylaws may include any provision for the regulation and management of the affairs of the corporation, its rights or powers, the rights, powers or duties of its members, directors or officers, or the directors' qualifications, classification, number or term of office, or fixing their compensation, not inconsistent with law or the articles.
 R.S. 12:224. Board of Directors
 * * * B. Subject to any limitations, restrictions or reservations in the articles, the by-laws or this Chapter, the affairs of the corporation shall be managed by a board of directors. . . . If not fixed in the articles or by-laws, the number of directors shall be the number elected from time to time by the members. . . . Unless the articles or by-laws provide otherwise, the directors shall hold office for one year and until their successors are chosen and have qualified. . . . *Page 9 
 C. Each director shall hold office for the term for which he was named or elected, and until his successor is elected and qualified. Directors, other than those constituting the first board, shall be elected by the voting members, unless some other method is expressly provided in the articles and except as hereinafter provided in the case of vacancies.
 * * * E. The number, classification, qualifications, compensation, terms of office, manner of election, time and place of meeting, and powers and duties of the directors, may, subject to the provisions of this Chapter, be prescribed by the articles or the by-laws. Except as otherwise prescribed in the articles or by-laws:
 * * * (4) The members, by vote of a majority in interest of all of the voting members, may, at any special meeting called for the purpose, remove from office any one or more of the directors, notwithstanding that his or their terms of office may not have expired, and may forthwith at such meeting proceed to elect a successor for the unexpired term. Whenever the members of any class or series are entitled to elect one or more directors, the provisions of this subsection shall apply, in respect of the removal of a director or directors so elected, and the election of a successor or successors, to the vote of the members of that class or series, and not to the vote of all of the members. . . .
 * * * (8) . . . The designation of and delegation of authority to a committee shall not relieve the directors of any responsibility imposed on them by law.
 R.S. 12:225. Officers and agents
 * * * B. Such other officers and agents as may be necessary for the business of the corporation may be appointed by the board of directors or in the manner provided in the by-laws. *Page 10 
 R.S. 12:237. Amendment of articles generally
 A. A corporation may amend its articles in compliance with any method stipulated in its articles. . . .
 R.S. 12:247. Voluntary transfer of assets
 A. A voluntary sale, lease, exchange or other disposition of all or substantially all of the assets of a corporation, including its good will, franchise or other rights, may be authorized by it, in the manner prescribed in this section, upon such terms and conditions as it deems expedient, including an exchange for shares or obligations of another nonprofit, business or foreign corporation.
 B. If the corporation is not insolvent, such authorization may be given only by the members, by vote of two-thirds (or such lesser proportion, not less than a majority, as the articles may provide) in interest of the voting members present. . . . If the corporation is insolvent, such authorization may be given by a vote of two-thirds of the entire board of directors, approved by the voting members as required by R.S. 12:207(D) if immovable property is involved. . . ."
We turn now to your questions which we have divided into four categories, to-wit: Part A through Part D.
A. Queries Regarding the Two NewCorps 1. Can a NewCorp be created, under Louisiana law, by each hospital service district as a quasi-public, nonprofit, non-stock 501(c)(3) corporation, which will comply with the Open Meetings, Public Records and Public Bid Laws? If so, will the NewCorps be entitled to the statutory exemptions from these public laws, including the exemptions afforded under R.S. 46:1073?
We answer your first question in the affirmative. The Districts are authorized to create a NewCorp as a quasi-public, nonprofit, non-stock 501(c)(3) corporation. Act No. 180, Sections 1(B)(5) and 3(15), R.S.46:1055(B) and Attorney General Opinion No. 81-1229. The Districts cannot, by delegating their authority to the NewCorps, avoid ultimate responsibility for their respective hospitals and the actions of the NewCorps. Attorney General Opinion No. 96-117. Thus, as quasi-public bodies, the NewCorps are required to comply with the Open Meetings, Public Records and *Page 11 
Public Bid Laws. Guste v. Nichols, 564 So.2d 682 (La. 1990) and Attorney General Opinion Nos. 96-117, 95-7 and 79-601. While the NewCorps are subject to the above referenced public laws, they are also afforded the exemptions contained in each, including those afforded by R.S. 46:1073. Attorney General Opinion No. 95-346.
 2. Can each NewCorp serve as an operations and management company for its District? Can the NewCorps also serve as members of the AllianceCorp and as a link from the Districts to the AllianceCorp?
The NewCorps may serve as operations and management companies for their respective Districts. Act 180, Sections 3(15) and 8(A); R.S. 46:1055 and Attorney General Opinion No. 96-117. Further, the NewCorps may serve as members of the AllianceCorp and a link from the Districts to the AllianceCorp. Act 180, Sections 1(B)(5), 3(15) and 8(a), R.S. 12:201(16) and 202, R.S. 46:1072(1) and 1077 and Attorney General Opinion No. 81-1229.
 3. Can the AllianceCorp be the sole Class "A" Member of each NewCorp, having certain reserve powers relating to the governance and operation of each NewCorp, but having no rights to assets upon liquidation? Can each District be the sole Class "B" Member of its NewCorp?
AllianceCorp may be the sole Class "A" Member of each NewCorp, having certain reserve powers relating to the governance and operation of each NewCorp, but having no rights to assets on liquidation. R.S. 12:201(17) and 217(A). Further, each District can be the sole Class "B" Member of its NewCorp. R.S. 12:217(A).
 4. Can the AllianceCorp nominate and elect one member to serve on the Board of each NewCorp? Can the AllianceCorp elect the remaining persons to serve on the Board of each NewCorp from a list of individuals nominated by the Districts? If the AllianceCorp is not satisfied with the nominations, can it require additional nominations? Finally, can NewCorp's directors serve as Commissioners of its District and can the District's Commissioners serve as directors of its NewCorp?
We answer the first three parts of this question in the affirmative. R.S. 12:201(16), 217(A) and 224. We recommend that you submit the last issue regarding cross-service of Directors/Commissioners to the Louisiana Board of Ethics for its disposition. *Page 12 
 5. Can the AllianceCorp be given the right to approve amendments to the articles of incorporation and by-laws of each NewCorp?
The amendment of articles of incorporation is governed by R.S. 12:237. Paragraph "A" provides that a corporation may amend its articles in compliance with any method stipulated in its articles. However, if the amendment would adversely affect the rights of the members of any class or series, Paragraph "C" enables that class to vote on the amendment. Section 222 governs the amendment of by-laws which are reserved to the members or the directors of the corporation. Section 222 further provides that any action of the directors may be changed by the members.
B. Queries Regarding the AllianceCorp
Your questions relating to the AllianceCorp are predicated upon the assumption that the four private, nonprofit hospitals become incorporators and members of the AllianceCorp. Given this assumption, you ask:
 1. Can each NewCorp become a member of the AllianceCorp and serve along with the four private, nonprofit hospitals?
We are of the opinion that the NewCorps can become members of the AllianceCorp along with the four private, nonprofit hospitals. Act 180, Sections 1(B)(5) and 3(15), R.S. 12:201(16) and (17), 202 and R.S.46:1055(B) and 1077. In this regard, we conclude that the NewCorps constitute quasi-public, nonprofit, non-stock corporations. As such, they are considered artificial persons and/or members of the AllianceCorp.
 2. Can the AllianceCorp be the "limited parent" of its members, coordinate and integrate the health care services of its members, exercise specified control over its members and be the lead organization for the accomplishment of the purposes and mission of the Alliance?
While the term "limited parent" is not defined, we are of the opinion that the AllianceCorp is not a "parent corporation" of any of its members. A parent corporation is a company owning more than fifty (50%) percent of the voting shares and/or a controlling interest of another company, commonly referred to as a subsidiary, Black's Law Dictionary,6th edition (1990). A parent corporation is one which has working control through stock ownership of its subsidiary corporations. Conversely, a subsidiary corporation is one which is controlled by another corporation by reason of the latter's ownership of at least a majority of the shares of stock of the other corporation. 18 C.J.S. § 5, Parent or SubsidiaryCorporations (1990). Accordingly, AllianceCorp cannot be the "parent" or the *Page 13 "limited parent" of its members. However, we can find no prohibition against AllianceCorp constituting the lead organization by coordinating and integrating the health care services of its members for the accomplishment of the purposes and mission of the Alliance.
 3. Can the AllianceCorp board of directors be comprised of the AllianceCorp CEO, one person elected by each of the NewCorps, and one person elected by each of the four private, nonprofit hospitals, all of whom, in turn, will elect three or four additional outside directors from the community?
It is the opinion of this office that the AllianceCorp's board of directors can consist of its CEO, one person elected by each of the NewCorps, and one person elected by each of the four private, nonprofit hospitals. Further, the aforementioned directors may, in turn, elect three or four additional outside directors from the community. R.S.12:224(C) and (E).
 4. Can each of the NewCorps and the four private, nonprofit hospitals remove, at will, the director each of them elects, and can the AllianceCorp board of directors remove any director for cause by a two-thirds (super-majority) vote?
The provisions regarding the removal of members of the board of directors is found at R.S. 12:224(E)(4). As previously noted, it provides for the removal of members of the board of directors by a majority of the members in interest of the corporation. Section 224 does not specifically authorize the removal of directors in the manner set forth in your opinion request. However, Section 224(E)(4) is prefaced with the language "Except as otherwise prescribed in the articles or bylaws:". Accordingly, if the by-laws and/or articles of incorporation provide for another method of removal, it would appear that same would be permissible.
 5. Will the AllianceCorp constitute a private corporation exempt from the Open Meetings, Public Records and Public Bid Laws, and other similar laws applicable to public or quasi-public corporations or bodies?
A corporation is a "public corporation", as distinguished from a"private corporation", when it is created for a public purpose only, connected with the administration of government, and when its whole interests and franchises are the exclusive property and domain of the government itself. National Bank of Commerce in New Orleans v. Board ofSupervisors of Louisiana State University and Agricultural MechanicalCollege, 206 La. 913, 20 So.2d 264 (1944). *Page 14 
A "private corporation" is generally one created for private purposes and not classified as public, and distinguished from purely public purposes. Miller, et al. v. Davis, et al., 136 Tex. 299, 150 S.W. 2d 973
(1941). "`Private corporation' are those whose direct objective is to promote private interests, and in which the public has no concern, . . . [which] derive(s) nothing from the government, except the right to be corporations. . . ." Attorney General Opinion Nos. 93-595 and 78-1183.
A "quasi-public corporation" is one affected with a public interest; (i.e., a class of private corporations) which, on account of special franchises conferred on them, owe a duty to the public which they may be compelled to perform. State, ex rel. Coco v. Riverside Irrigation, Co., Ltd., 142 La. 10, 76 So. 216 (1917). Quasi-public bodies are those bodies which are not strictly private bodies. Attorney General Opinion No. 78-1183. This office has consistently held that quasi-public bodies (e.g., corporations) constitute those which are: (i) not strictly private bodies, (ii) primarily funded by public funds, and (iii) organized to serve a public purpose or provide a public service. Attorney General Opinion Nos. 93-595, 92-736, 90-271, 84-583, 78-1183, 77-1726 and 75-124. In the instant case, we note the following factors to be relevant: (a) the four private nonprofit corporations will be the incorporators of AllianceCorp; (b) four of the six members of the AllianceCorp will be private, nonprofit hospitals; (c) only two of the eleven directors will be elected by the NewCorps; (d) most of the funding for the AllianceCorp will come from the four private, nonprofit hospitals; (e) AllianceCorp will own none of the assets of either the NewCorps or the Districts; and (f) the NewCorps will function as quasi-public corporations and the Districts will continue to function as public bodies.
Considering the above, it is our opinion that the AllianceCorp will not constitute a public or quasi-public body, but rather a private corporation, exempt from the public laws previously enumerated.
C. Queries Relating to the Affiliation Agreement
You ask the following questions based upon the precept that the NewCorps will enter into a long-term Affiliation Agreement (the "Agreement") together with the four nonprofit hospitals and the AllianceCorp.
 1 Can the Agreement provide that neither the two NewCorps nor their Districts will prepare any changes in an institutional mission or philosophy without the approval of the AllianceCorp?
Initially, it should be noted that the Districts cannot, by delegating their authority, avoid ultimate responsibility for the hospital or the actions of their boards of directors. R.S. 12:224(E)(8) and *Page 15 
Attorney General Opinion No. 96-117. As previously noted, R.S. 46:1071
and 1077 provide broad and sweeping authority for confecting written agreements to carry out the provisions of hospital health services through joint ventures. Thus, as long as the articles of incorporation and by-laws do not prohibit such a provision, we can find no authority which would pretermit its inclusion.
 2. Can the Agreement provide that each of the NewCorps, acting for their respective Districts, be required to prepare a strategic plan for approval by the District and the AllianceCorp?
We answer this question in the affirmative, citing the reasons set forth in answer to Part C, No. 1, supra.
 3. Can each of the NewCorps, acting for their respective Districts, be required to prepare capital and operating budgets which must be approved by the Districts and AllianceCorp?
We answer this question in the affirmative, citing the reasons set forth in answer to Part C, No. 1, supra. Further, the OM between the Districts and their NewCorps should contain provisions requiring capita] and operating budgets to be approved by the respective Districts and AllianceCorp.
 4. Can the Agreement provide that significant changes in programs and services of the NewCorps and the Districts must be approved by the AllianceCorp, and can the AllianceCorp suggest changes in programs and services for each District's hospital?
We answer this question in the affirmative, citing the reasons set forth in answer to Part C, No. 1, supra.
 5. Can the Agreement require that managed care contracts and provider agreements entered into by the NewCorps be approved by the AllianceCorp? Also, can the AllianceCorp, or a separate nonprofit corporation owned or controlled by the AllianceCorp, negotiate with a third-party payor and enter into managed care contracts or provider arrangements which bind the NewCorps?
We answer your first question in the affirmative, citing the reasons contained in our answer to Part C, No. 1, supra. In answer to your second question, it is our opinion that the NewCorps should be a party to any contract, including managed care contracts, if they are to be bound by the provisions of same. *Page 16 
 6. Can the Agreement require that the AllianceCorp shall have the power to approve the sale, encumbrance, or acquisition of institutional assets exceeding an established threshold, annually, for each hospital, said threshold to be based on the relative financial participation of the institution in the Alliance, as well as the institution's financial size in proportion to that of other participants?
We answer this question in the affirmative, citing the reasons set forth in answer to Part C, No. 1, supra.
 7. Can the Agreement provide that the AllianceCorp has the power to require the transfer of assets among the member institutions to promote the goals and objectives of the Alliance, provided that no transfer will be undertaken if it would either damage the long-term viability of the institution or be inconsistent with contractual or bond obligations of the institution?
We answer this question in the affirmative, citing the reasons set forth in answer to Part C, No. 1, supra. Extreme caution should be exercised so that the transfer(s) do not impair any obligations to bondholders and/or do not constitute a prohibited donation under Article VII, Section 14 of the 1974 Louisiana Constitution.
 8. Can the Agreement require the Districts to obtain the approval of the AllianceCorp for any change in debt structure other than the incurring of short-term debt?
We answer this question in the affirmative, citing the reasons set forth in answer to Part C, No. 1, supra. Extreme caution should be exercised so that any change in debt structure would not impair any obligations to bondholders and/or would not constitute a prohibited donation pursuant to Article VII, Section 14 of the 1974 Louisiana Constitution. This approval would, of course, be an addition to the approvals required by the statutory provisions pertaining to the incurring of debt applicable to the Districts.
 9. Can the Agreement require that the AllianceCorp has the power to require membership fees from the two NewCorps for the operation and furtherance of the goals and objectives of the Alliance, which membership fees shall take into account the relative financial participation of the institution so as not to damage its long-term viability?
We answer this question in the affirmative, citing the reasons set forth in answer to Part C, No. 1, supra. Extreme caution should be exercised so that the membership fees are reasonable and support the NewCrns' long term viability. *Page 17 
 10. Can the Agreement require that the two NewCorps recruit and select their own CEO/Administrators, to be approved by the AllianceCorp?
As previously noted, R.S. 12:207(B)(9) empowers the NewCorps to elect or appoint their officers and agents. Further, R.S. 12:225(B) authorizes the corporation, through appointment by the board of directors or in the manner provided in its by-laws, to select other officers and agents as may be necessary for the business of the corporation. Accordingly, it is our opinion that the Agreement, alone, could not require the AllianceCorp's approval of the NewCorps' CEOs. Such approval must be authorized by the NewCorps' articles of incorporation and/or by-laws.
 11. Can the Agreement provide that the Districts, acting through their NewCorps, may withdraw and terminate their memberships in the AllianceCorp conditioned upon the payment of a penalty to the AllianceCorp if the terminating member affiliates with a party other than the AllianceCorp within two years after termination?
We answer this question in the affirmative, citing the reasons set forth in answer to Part C, No. 1, supra. We also draw your attention to R.S.23:921 and the limitations contained therein. Should legal counsel for the Districts conclude that Section 921 is applicable to the Districts, any non-competition clause in the agreement should conform to the provisions of Section 921.
 12. Can the Agreement provide that the Districts, through their NewCorps, be expelled and have their membership in the AllianceCorp terminated upon an affirmative vote of seventy-five (75%) percent of the directors / appointees of the members of the AllianceCorp and a seventy-five (75%) percent vote of all the directors of the AllianceCorp, having determined that the NewCorps have taken actions which undermine the ability of the Alliance to achieve its mission? Further, can the NewCorps be required to pay penalties for withdrawal from AllianceCorp?
As previously noted, R.S. 12:217(A) provides that membership shall be governed by the rules of admission, retention, suspension and expulsion, which the articles or by-laws prescribe. Accordingly, we are of the opinion that any provisions relating to the withdrawal and/or expulsion of the NewCorps, including the payment of penalties, must be provided for in the articles of incorporation or by-laws of the NewCorps. Inclusion in the Agreement, alone, would not suffice.
 13. Can the Agreement provide that the AllianceCorp has the power to approve admission to, or association with, the AllianceCorp of additional hospitals or other business entities? *Page 18 
While there is no prohibition against the Agreement containing provisions relating to additional memberships, we are of the opinion that it is necessary to make provisions for same in the articles of incorporation and/or by-laws of the other members. R.S. 12:217(A).
 14. Can the Agreement provide that all powers not reserved to the AllianceCorp, be vested in the NewCorps and their respective Districts, including, but not limited to the operation of the hospitals; establishment of policies; direction of employees and their compensation, maintenance of medical staff by-laws, rules and regulation; granting and renewal of medical staff membership and privileges; utilization review and quality improvement activity; and control over the institutions' names, marks, and logos?
We answer this question in the affirmative, citing the reasons set forth in answer to Part C, No. 1, supra. Further, R.S. 46:1071 and 1077 provide broad and sweeping authority for confecting written agreements to carry out the provisions of hospital health services through joint ventures. Thus, so long as the articles of incorporation and by-laws do not prohibit such a provision, we can find no authority which would pretermit its inclusion.
 15. Can each District intervene in the Agreement and agree to be bound by its provisions?
We are of the opinion that the Districts can intervene in the Agreement and be bound by its provisions under the broad authority contained in R.S. 46:1077. However, the Districts will remain subject to the public laws discussed hereinabove, as well as any applicable constitutional provision, including, but not limited to Article VII, Section 14 of the 1974 Louisiana Constitution. Thus, in the event the terms of the Agreement, as applied to the Districts, conflict with applicable statutory and constitutional laws, said terms will be unenforceable against the Districts. In addition, it may be argued that the term of the contractual intervention should not exceed the terms of office of the Districts' board members authorizing the intervention.
D. Queries Relating to the Operations and Management Agreement
These questions pertain to the proposed operations and management agreement ("OM") to be entered into between the Districts and their respective NewCorps.
 1. Can the OM provide the NewCorps with the power and authority to manage and operate the hospital and other assets and properties of the Districts pursuant to the provisions of the OM, and authorize the NewCorps to act as a link between the Districts and the AllianceCorp? *Page 19 
We answer this question in the affirmative pursuant to the broad and sweeping authority contained in Act No. 180, Sections 1(B)(5), 3(15) and 8(a), R.S. 46:1055(B), 1071 and 1077 and Attorney General Opinion Nos. 96-117 and 79-601.
 2. Can the OM provide that the NewCorps will compensate the CEO-Administrator and other high-end management personnel for the management and operation of the Districts, said compensation to be reimbursed by the Districts?
We answer this question in the affirmative, citing the reasons set forth in answer to Part D, No. 1., supra. We further recommend that you contact the Louisiana Board of Ethics regarding this question to ensure compliance with the State's ethics laws.
 3. Can the OM provide that the Districts will continue to own all of their assets, including those acquired after the execution of the OM?
We answer this question in the affirmative, citing the reasons set forth in answer to Part D, No. 1., supra.
 4. Can the OM provide that the Districts will continue to be responsible for their liabilities, including bonded indebtedness, and provide that any new indebtedness will likewise constitute indebtedness of the Districts?
We answer this question in the affirmative, citing the reasons set forth in answer to Part D, No. 1., supra. In addition, the Districts must also follow the statutory provisions regarding the issuance of debt by the Districts.
 5. Can the OM provide that all revenues of the Districts will continue to be the property of same, including revenues generated and/or received after the execution of the OM? Can it further provide that all monies received from the management and operation of the hospital and other facilities and operations shall be deposited to the accounts of the respective Districts, without the necessity of their deposit to the accounts of the NewCorps?
We answer this question in the affirmative, citing the reasons set forth in answer to Part D, No. 1., supra. *Page 20 
We again emphasize that you consult with appropriate state and federal authorities regarding the application, vel non, of laws and regulations pertaining to ethics for public officers and employees, taxation, anti-trust and audits. We also recommend that you contact appropriate bond counsel with regard to any question or transaction which may pertain to the issuance of bonds and/or outstanding bonds and the corresponding rights of bondholders.
Trusting this adequately responds to your inquiry, I am
 Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY:__________________________ Assistant Attorney General RPI/Rob3/JMM/cla
[1] We defer to the Hospital's CPA in determining whether the Venture is a component unit of the Hospital. We are not qualified, nor do we have sufficient first hand information, to make such a determination.
[1] The Articles of Joint Venture which you submitted to this office are between Acadian and Acadia-St. Landry Home Health, Inc., which we understand was created by and is part of the Acadia-St. Landry Hospital Service District.